UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TINO MARINO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 8-326-B-S |
| | ) |
| COMMISSIONER, MAINE DEPARTMENT OF | ) |
| CORRECTIONS, et al., | ) |
| | ) |
| Defendants | ) |
| | ) |

**RECOMMENDED DECISION ON MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT
MARTIN MAGNUSSON (Doc. No. 72)**

Tino Marino, who is proceeding on a third amended complaint, is suing nine defendants for his alleged mistreatment when he was[1] an inmate at the Maine State Prison. Herein I address a hybrid motion to dismiss/motion for summary judgment filed by Department of Corrections Commissioner Martin Magnusson. On September 26, 2006, Marino first got into disciplinary trouble when he began talking to another inmate who was 'locked in,' thereby infringing prison rules. In response to an order by Officer Hirsh, the officer on duty in Marino's unit that night, restricting Marino to his cell for refusing to stop talking with this inmate (a practice called 'tagging'), Marino expressed his incredulity and Marino grabbed his genitals with both hands as he walked towards his cell. This conduct led Hirsch to order Marino to see the sergeant on duty, former Sergeant James O'Farrell, Jr. There is no dispute, that as a consequence of the meeting with Sergeant O'Farrell, King ("the rover" for the unit), and Hirsch, Marino was ordered by Sergeant O'Farrell to walk back to his cell holding his genitals, an order with which Marino complied while being escorted by Officers King and Hirsch and Sergeant O'Farrell.

---

[1] According to a recent affidavit submitted by Marino's attorney, Marino is currently living in Lubec, Maine. (Campbell May 24, 2010, Aff. ¶ 2, Doc. No. 139-2.)

Marino's lawsuit, as tweaked by Marino over the course of this litigation, also involves incidents on December 7, 2006, February 1, 2007, and August 24, 2007, all which Marino links to his theory that these subsequent events were motivated by retaliatory motivation. Based on the summary judgment record below and for the reasons that follow, I recommend that the Court grant summary judgment in favor of Commissioner Magnusson as Marino has failed to create a genuine dispute of fact material as to the issue of whether Magnusson was affirmatively linked as a supervisor to any of Marino's alleged mistreatment at the hands of the prison employees directly involved in the identified incidents.[2] With regards to the two counts under state law, I recommend that the court grant judgment in favor of Magnusson as Marino does not defend his assault count as against Magnusson and he is clearly not entitled to a trial on a reckless infliction of emotional distress count against this defendant. [3]

## DISCUSSION

**Summary Judgment Standard**

"The judgment sought" by Commissioner Magnusson, "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c)(2). The purpose of summary judgment " 'is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Coyne v. Taber Partners I, 53 F.3d 454, 457 (1st Cir. 1995) (quoting Wynne v. Tufts Univ. School Med., 976 F.2d 792, 794 (1st Cirx. 1992).) "A Rule 56 motion may well end the

---

[2] It may be that this defendant is entitled to dismissal based on the complaint allegations against him. However, as with the other six defendants who have also filed hybrid motions, I elect to proceed with the summary judgment analysis in the interest of definitively determining as to all the defendants -- in one round of recommended decisions and objections -- if there are any claims that deserve proceeding to trial. Defendants O'Farrell, Jr. and King have moved for summary judgment only, King having unsuccessfully moved for dismissal earlier in this action and O'Farrell apparently recognizing that such a motion would have been futile in his case.

[3] Marino "concedes the point that the claims against the defendants in their official capacity w[ere] ill conceived" and subject to dismissal. (Resp. Mem. Magnusson Dispositive Mot. at 5 n. 2.)

case unless the party opposing it demonstrates the existence of a trialworthy issue as to some material fact." Id.

**Supervisory Liability**

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" Ashcroft v. Iqbal, 556 U.S. __, __, 129 S. Ct. 1937, 1948 (2009). To survive summary judgment Marino must establish "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. at 1948-49. Mere knowledge of a subordinate's wrongful conduct does not establish 42 U.S.C. § 1983 liability for a supervisor. Rather, there must be an affirmative link between the conduct of the supervisor and the constitutional deprivation experienced by Marino. See Sanchez v. Pereira-Castillo, 590 F.3d. 31, 49 (1st Cir. 2009); Maldonado v. Fontanes, 568 F.3d 263, 274-75 (1st Cir. 2009)[4]; Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005). Examples of affirmative links include "supervisory encouragement, condonation or acquiescence" in relation to the deprivation. Maldonado, 568 F.3d at 275 (quoting Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008)). Deliberate indifference can also result in supervisory liability. Id.

In his response to Magnusson's motion for summary judgment, Marino summarizes his theory of recovery as against the Commissioner as follows:

> Marino's complaint alleges the constitutional violation of plaintiff's right to be free from cruel and unusual punishment secured by the 8th Amendment of the United State[s] Constitution. Count One alleges that subordinates of Jeffrey Merrill, Warden for the Maine State Prison, forced Marino to grasp his genitals tightly and to walk down a prison hallway so that others could witness Marino's humiliation and pain. Plaintiff's Third Amended Complaint ¶ 9. Plaintiff's Complaint goes on to allege retaliatory actions by the other named defendants

---

[4] Maldonado did reflect: "Some recent language from the Supreme Court may call into question our prior circuit law on the standard for holding a public official liable for damages under § 1983 on a theory of supervisory liability." Id. at 724 n.7.

3

> which included the tearing up of plaintiff's grievances which detailed the defendants' retaliatory actions and numerous physical assaults of Marino when he refused to stop pursuing his legal rights. Id. at ¶¶ 8-14. Marino's complaint states that, as the Warden, it was defendant Merrill's responsibility to supervise and oversee the management of his subordinates. Id. at ¶¶ 2, 15. Plaintiff's complaint goes on to state that having that responsibility and the knowledge of these retaliatory actions, the Warden displayed deliberate indifference by failing to take appropriate remedial actions to prevent further abuse of Marino by Maine State Prison employees. Id. For these reasons, Marino has demonstrated that his allegations were well-pleaded and are sufficient to "nudge" his claim of deliberate indifference "across the line from conceivable to plausible." Iqbal, 129 U.S. at 1951.

(Resp. Mem. Magnusson Dispositive Mot. at 4.)

He tries to connect the dots between the alleged incidents involving Maine State Prison employees and the Commissioner as follows:

> As Warden, Merrill was informed of the incident which occurred on September 26, 2006 and assigned an officer to investigate that incident. Id. at ¶¶ 9-11.
> Magnusson received Marino's third level grievance regarding the incident which occurred on September 26, 2006. *Id.* at ¶¶ 10-11. The Commissioner was therefore aware of the behavior exhibited by employees Magnusson is ultimately responsible for as Commissioner. Id. at ¶¶ 10-15. Magnusson was made aware that only defendant O'Farrell, Jr. was discharged from employment at the Maine State Prison as a result of the above-mentioned incident that also involved officers King and Hirsch. Id. at ¶ 16. Magnusson agreed that such staff misconduct, as exhibited by defendant O'Farrell, Jr., was unprofessional and should not be tolerated at Maine State Prison. Martin Magnusson Affidavit ¶ 12. What Defendant Magnusson forgets to say is that with his tacit approval as supervisor, Defendant Sergeant O'Farrell was given a nice pat on the back, and $10,000, plus an expungement of any disciplinary action in return for a voluntary resignation. See O'Farrell Jr. Resignation. Magnusson denied every one of Marino's third level grievance appeals. Id. at ¶ 18. Marino wrote a total of forty-one grievances, a number of which documented incidents of retaliation following the September 26, 2006 incident. Marino Deposition pg. 90 lines 1-25. Incidents of retaliation included the tearing up of Marino's grievances and other legal work, as well as numerous assaults. Marino Affidavit pgs 65-67, 71-72, 76, 77-80, 83-85.

(Resp. Mem. Magnusson Mot. Summ. J. at 9-10.)  As it becomes clear below, this case lacks evidence of an affirmative link between Magnusson and the officers who are alleged to have violated Marino's rights.

*Material Facts*

Martin Magnusson is the Commissioner of the Maine Department of Corrections and has been since May of 1997. (SMF ¶ 1; Resp. SMF ¶ 1.) As the Commissioner, Magnusson generally oversees the management and control of the correctional facilities, detention facilities and correctional programs in the state of Maine. (SMF ¶ 2; Resp. SMF ¶ 2.)

Marino was incarcerated at the Maine State Prison from September 21, 2006, until March 20, 2008. (SMF ¶ 3; Resp. SMF ¶ 3.) During the time Marino was incarcerated at the Maine State Prison, Magnusson was Commissioner and did not directly supervise daily operations at the Maine State Prison. (SMF ¶ 4; Resp. SMF ¶ 4.) Magnusson did not directly supervise any staff at the Maine State Prison, except for the Warden. (SMF ¶ 5; Resp. SMF ¶ 5.)

Magnusson was not present at the Maine State Prison during any of the incidents alleged by Marino on September 26, 2006, December 7, 2006, February 1, 2007, or August 24, 2007. (SMF ¶ 6; Resp. SMF ¶ 6.) Magnusson did not directly supervise any correctional officers, sergeants or other employees at the Maine State Prison involved with the incidents alleged in the complaint. (SMF ¶ 7; Resp. SMF ¶ 7.)[5]

Magnusson has never had any personal contact with Marino and has never met him. (SMF ¶ 8; Resp. SMF ¶ 8.) Magnusson's only involvement with Marino was when he signed the responses to Marino's third level grievance appeals. (SMF ¶ 9; Resp. SMF ¶ 9.) Marino filed a third level grievance appeal in Grievance No, 06-MSP-360 that was received in the Commissioner's office in January of 2007. (SMF ¶ 10; Resp. SMF ¶ 10; SAMF ¶ 14.) This grievance appeal was regarding an incident on September 26, 2006, in the Medium Unit of the Maine State Prison, and involved a Sergeant James E. O Farrell and two correctional officers,

---

[5] Marino's attempted qualification of Paragraphs 4,5, and 6 are arguments about how the simple facts should be construed.

Officer Nova Hirsch and Officer Jeffrey King. (SMF ¶ 11; Resp. SMF ¶ 11; SAMF ¶ 14; see also SAMF ¶¶ 2-13.)

During the period of Marino's incarceration, third level grievance appeals were being handled by Carl McHatten, Classification Officer. (SMF ¶ 12; Resp. SMF ¶ 12.) Mr. McHatten had handled third level grievance appeals since November of 2004. In Magnusson's experience, Mr. McHatten did an excellent job reviewing grievance appeals. He did not hesitate to question lower level responses and engage in further investigation of the issues raised by grievances, if appropriate. He brought unresolved or complicated issues to Magnusson's attention for specific direction with respect to responding at his level. Otherwise, Magnusson relied on what he had found, from experience, to be his good judgment. (SMF ¶ 13; Resp. SMF ¶ 13.) In this case, Magnusson relied on the response McHatten had drafted (and had no reason not to) and so on January 19, 2007, Magnusson signed the response denying the appeal and agreeing with the findings by Warden Jeffrey Merrill in his second level grievance decision. (SMF ¶ 14; Resp. SMF ¶ 14; SAMF ¶¶ 41, 42; Resp. SAMF ¶ 41. 42.)

Marino wrote an additional letter to Warden Merrill on April 18, 2007, describing the September 26, 2006, incident and the alleged retaliation which followed. (SAMF ¶ 43; Resp. SAMF ¶ 43.) Marino insists that after December 7, 2006, many of his grievances were not processed or officers refused to sign them. (SAMF ¶ 44; Marino Aff. ¶¶ 61, 62; Grievance No. 07 MSP 401.) Magnusson responds that Marino filed thirty-six grievances after December 7, 2006, and the grievances were accepted unless they did not comply with the grievance policy. (Resp. SAMF ¶ 44; Costigan Aff. 6.)

Aside from the grievance, Magnusson had been informed of this incident by the Warden at the Maine State Prison at the time, Jeffrey Merrill. (SMF ¶ 15; Resp. SMF ¶ 15.) Magnusson

6

was informed by Jeffrey Merrill that after an investigation, the supervisor involved with the incident, Sergeant James E. O'Farrell, was discharged from employment at the Maine Sate Prison and was no longer employed by the Department of Corrections. (SMF ¶ 16; Resp. SMF ¶ 16.) Magnusson agreed with this course of action as such staff misconduct and unprofessional behavior should not be tolerated at the Maine State Prison. (SMF ¶ 17; Resp. SMF ¶ 17.) Since the culpable party had been discharged from the prison, Commissioner Magnusson denied the third level grievance appeal and agreed with the Warden's second level grievance response. (SMF ¶ 18; Resp. SMF ¶ 18.) Magnusson believed that the situation had been handled appropriately. (SMF ¶ 19; Resp. SMF ¶ 19.) Prior to September 26, 2006, Magnusson had not learned of any information that would indicate that Sergeant James E. O'Farrell would engage in such conduct. (SMF ¶ 20; Resp. SMF ¶ 20.) Sergeant O'Farrell's firing was expunged from the record. (SAMF ¶ 64; Resp. SAMF ¶ 64.)

On December 7, 2006, there was another incident involving Marino and MSP officers (see SAMF ¶¶ 21-39; Resp. SAMF ¶¶ 21-39) which resulted in a use of force report (Doc. No. 124-5 at 1-12). Marino wrote detailed letters concerning the incidents which took place on December 7, 2006, to both Deputy Warden Riley on December 13, 2006, and to Warden Merrill on December 19, 2006. (SAMF ¶ 40; Resp. SAMF ¶ 40.)

On February 1, 2007, a further incident involving Marino and MSP officers occurred, (see SAMF ¶¶ 45-48; Resp. SAMF ¶¶ 45-48), resulting in a use of force report (Doc. No.124-5 at 13-18). Marino maintains that he submitted a grievance regarding this incident that was never processed. (SAMF ¶ 49; Marino Aff. ¶ 72.) Merrill responds that Marino fails to identify who did not process the grievance and points out that Merrill never received a grievance appeal regarding this incident. (Resp. SAMF ¶ 49; Merrill Aff. & Ex. 1.)

On August 5, 2007, Marino wrote a letter to Warden Magnusson detailing alleged incidents of retaliatory conduct on behalf of prison guards towards Marino and also of the abuses of the grievance process. (SAMF ¶ 50; Resp. SAMF ¶ 50.)

On August 24, 2007, Officer Tripp and Marino had a verbal disagreement about whether Marino should do his laundry or whether he had a right to use this time to do his legal work. (See SAMF ¶¶ 51 -54; Resp. SAMF ¶¶ 51- 54.)

Marino filed forty-one grievances. (SMF ¶ 21; Resp. SMF ¶ 21.) Marino felt it was okay to file grievances and he continued to do so and pursue his legal work. (SMF ¶ 22; Marino Dep. at 62:18-19; SAMF ¶ 18; Resp. SAMF 18.) Marino further opines:

> The plaintiff may have felt "okay" to write letters to anyone he wanted to but noted that "if someone who owns the – who runs the prison is going to tell you these things (referring to Defendant Merrill telling the plaintiff not to file grievances or conduct legal work) and then the next day you get physically beat on and thrown in seg and you get tortured while you're down there and nobody does nothing about it after he just told you, well, we know what happened and my officers better not be retaliating against you, but then he does nothing to get me out of seg and I'm getting physically beat on until I try to hang myself and it gets to that point…[y]ou start doing what you have to do to not get beat on, not get killed, you understand?"

(Resp. SMF ¶¶ 36, 37; Marino Dep. at 61:22-62:13.) He avers that he had numerous attempts to file grievances thwarted by employees at the Maine State Prison. (Marino Aff. ¶ 62-67.) He states that incidents of retaliation included tearing up his grievances and other legal work, as well as numerous assaults. (SAMF ¶ 19; Marino Aff. ¶¶ 65-67, 71-72, 76, 77-80, 83-85.)[6]

Marino insists that prior to his December 6, 2006, meeting with Merrill he had filed grievances reporting not only the September 26, 2006, but also the numerous incidents of retaliation Marino had been experiencing as a result of filing grievances (SAMF ¶ 17) however

---

[6] Marino attempts to tie an incident with Officer Tripp on the day following his December 6, 2006, conversation with Merrill by asserting that he told Merrill that he would not stop filing grievances. (SAMF ¶21.) His record citations do not support the assertion that he told Merrill he would continue to file grievances. (Letter to Merrill at 2; Letter to Riley at 3; Dec. 7, 2006, Rubano Report.)

8

the paragraph of his affidavit he cites for this proposition does not support this assertion beyond that he told Merrill he was being retaliated against and Merrill in some way acknowledged this complaint during the conversation (Marino Aff. ¶ 37; see also SAMF ¶ 20). Merrill insists that this conversation was about the September 26, 2006, incident and he never found any information to corroborate Marino's allegation of retaliation. (Resp. SAMF ¶ 20; Merrill Aff. ¶¶ 21, 32; Costigan Aff. ¶ 16.)

Magnusson received numerous third level grievance appeals from plaintiff during his incarceration. (SMF ¶ 23; Resp. SMF ¶ 23.) Marino filed a total of eighteen third-level grievance appeals during his incarceration. (SMF ¶ 24; Resp. SMF ¶ 24.) Magnusson denied these grievance appeals and concurred with the findings of the Warden in his second level decisions. (SMF ¶ 25; Resp. SMF ¶ 25.) According to Magnusson, at no time did Magnusson learn of any information that would indicate that Mr. Marino was being targeted at the Maine State Prison because of the incident on September 26, 2006, with former Sergeant James O'Farrell. (SMF ¶ 26; Magnusson Aff. ¶ 19.) Citing to the grievance record in general, Marino responds that Magnusson indicated that he reviewed Marino's grievance appeal which contained numerous allegations that Marino was subject to retaliation by prison guards, including by other defendants in this action, as a consequence of the September 26, 2006, incident. (Resp. SMF ¶ 26.)

According to Marino, he suffers, as a direct result of these incidents, genital pain, migraine headaches, severe skin issues due to numerous applications of mace, stomach problems related to ulcers as well as constipation a result of stress, and severe heart pain and panic attacks five to ten times a day due to Post Traumatic Stress Disorder. (SAMF ¶ 57; Marino Aff. ¶¶ 140-147.) Magnusson responds that Marino has not provided an expert witness designation for a

medical professional who would be competent to testify to the alleged aggravation of Marino's condition. (Resp. SAMF ¶ 57; Hallisey-Swift Aff. ¶ 4.)

Ira Scherr was a correctional officer from August 2003 to July 2008 and was a union representative for most of that time including being the President of the Correctional Officers Union. (SAMF ¶ 55; Scherr Jan. 6, 2010 Aff. at 1.) Ira Scherr reported a corporate culture of corruption, harassment, and retaliation <u>against</u> correctional officers by all levels of administration at the Maine State Prison to Commissioner Magnusson. (SAMF ¶ 56; Scherr Apr. 22, 2010, Aff. ¶¶ 4- 14; Resp. SAMF ¶ 56) (emphasis added).

Marino's attorney in this action requested a copy of any and all videos regarding the alleged incidents from the defendants through discovery and was only provided with two videos neither of which depict the above-referenced incidents. (SAMF ¶ 62; Resp. SAMF ¶ 62.) Former Officer at the Maine State Prison, Ira Scherr, stated that the prison has a history of destroying documents and evidence in disciplinary cases involving investigation into employee conduct. (SAMF ¶ 63; Scherr Apr. 22, 2010, Aff. ¶ 15; Resp. SAMF ¶ 63.)

Marino filed only one notice of tort claim with the Office of the Attorney General for the incident on September 26, 2006. (SMF ¶ 24; Resp. SMF ¶ 27.)

*Analysis*

**Summary Judgment Standard**

"The judgment sought" by Martin Magnusson, "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c)(2). The purpose of summary judgment " 'is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'"

Coyne v. Taber Partners I, 53 F.3d 454, 457 (1st Cir. 1995) (quoting Wynne v. Tufts Univ. School Med., 976 F.2d 792, 794 (1st Cirx. 1992).) "A Rule 56 motion may well end the case unless the party opposing it demonstrates the existence of a trialworthy issue as to some material fact." Id.

*Constitutional Claim[7]*

Certainly, with regards to the incident on September 26, 2006, Magnusson had no knowledge available to him that could have prevented the course of conduct by the officers involved. The same is true for the December 7, 2006, incident as Merrill did not even issue his Level II response until December 19, 2006, and Marino signed his Third Level appeal on January 8, 2007. This leaves Marino with only his theory that this grievance of that incident alerted Magnusson to the risk that Marino would face retaliation on February 1, 2006, and his August 5, 2007, letter to Magnusson forewarned of his dispute with Officer Trip on August 24, 2010. As the facts set forth above demonstrate, Marino has asserted that he made persistent efforts to grieve other incidents of retaliation but he has not presented the court with concrete evidence of Magnusson's awareness of these grievances.[8]

The record contains an exhibit that includes fourteen second level grievance responses by Warden Jeffrey Merrill. (See Doc. No. 124-10.) These are as follows:

- 06 MSP 360. Response on December 19, 2006: Grievance of the September 26, 2006, incident

---

[7] There is no dispute in this litigation that, with respect to Marino's Count One claim, his theory of liability under the United States Constitution and the Maine Constitution are congruent and that this court can analyze the claims through the prism of 42 U.S.C. § 1983 jurisprudence. On this score I further not that Marino captions this count as one brought pursuant to 42 U.S.C. § 1983 but does mention the Maine Constitution in Paragraph 10 of his Third Amended complaint.

[8] This may be only a failure of proof on Marino's part but the whole purpose of the summary judgment process is to assess the parties' proof before trial to see if there is any trial worthy claim worthy of proceeding to trial. Magnusson sets forth his factual basis for judgment at this stage and concedes that he reviewed numerous Third Level appeals by Marino but Marino has, as I set forth below, only produced evidence of Magnusson's review of the Third Level appeal as to the September 26, 2006, incident.

11

- 06 MSP __. Response on December 29, 2006: Grievance of placement into SMU on October 19, 2006 for mental health reasons.
- 06 MSP 378. Response on January 2, 2007: Grievance regarding staff discouragement of filing a medical grievance. *Warden Merrill indicates that Marino did not approach the appropriate unit manager to sign his medical grievance as it had to be a supervisor with jurisdiction over the medical grievance.*
- 06 MSP 379. Response on January 2, 2007: Grievance regarding access to grievance forms. *Warden Merrill indicates that there was a four hour delay in access to the forms because Marino was being transferred from SMU back into the general population.*
- 07 MSP 096. Response on May 3, 2007: Grievance of a claim of excessive force on March 5, 2007.
- 07 MSP 105. Response on May 17, 2007: Grievance concerning paper restrictions in the SMU. *Warden Merrill indicates restriction resulted from Marino's unwillingness to follow prison rules and that the restrictions would be lifted when he decides to not use paper products to block cell vents.*
- 07 MSP 269. Response on November 11, 2007: Grievance regarding mental health, treatment and confinement issues in the SMU.
- 07 MSP 405. Response January 11, 2008: Grievance that Marino was unfairly removed from the Mental Health Unit and that the staff has retaliated for pursuit of legal action and contact with outside agencies. *Warden Merrill indicates that Marino has been followed closely by mental health and caseworker staff and seen frequently. With respect to grievance issue, remarks that he found no evidence that staff thwarted access to legal pursuits or retaliation for outside contacts and the Advocate has been available to Marino.*
- 07 MSP 435. Response February 14, 2008: Grievance that staff at SMU engaged in retaliation by locking him in. *Warden Merrill indicates that Marino was locked in on November 14, 200, for refusing an order and verbal aggression.*
- 07 MSP 451. Response February 14, 2008. Grievance concerning prisoner mail. *Warden Merrill indicates that mail from the Department of Justice is not privileged unless the return address contained the name and title of a DOJ official.*
- 08 MSP 31. Response March 4, 2008: Grievance that a supervisor would not sign his grievance(s). *Warden Merrill indicates that it was explained to Marino the need to clarify his complaints so that the supervisor with jurisdiction could understand the issues, attempt an informal resolution, and feel comfortable signing it.*
- 08 MSP 44. Response March 13, 2008. Grievance regarding staff conduct.
- 08 MSP 56. Response March 18, 2008. Grievance of staff mistreatment on January 30, 2008.
- 08 MSP 57. Response March 20, 2008. Grievance of the return of a grievance. *Warden Merrill indicates that Marino filed a separate grievance when the first one was not signed by the supervisor with jurisdiction and promising that a corrected copy of the receipt of Client Grievance Form II would be sent.*

The only showing Marino has made with regards to his grievance attempts is dependent on his six attached grievances:

- 06 MSP 360. The fully grieved September 26, 2006, incident.
- 06 MSP 416. Returned for an attempt at an informal resolution by a supervisor with jurisdiction (Doc. No. 101-3 at 2).
- 07 MSP 24. Returned for an attempt at an informal resolution by a supervisor with jurisdiction (Doc. No. 101-4 at 3).
- 07 MSP 276. Denied because it was filed after 15 days and did not qualify for expedited status (Doc. No. 101-5 at 7).
- 07 MSP 401. Returned for an attempt at an informal resolution by a supervisor with jurisdiction (Doc. No. 101-6 at 14).
- 07 MSP 402. Date received October 19, 2007- Returned for an attempt at an informal resolution by a supervisor with jurisdiction (Doc. No. 101-7 at 4); Date received December 26, 2007 - Denied because it was filed after 15 days and did not qualify for expedited status (Doc. No. 101-7 at 19).

It is evident that this record is insufficient to warrant sending a constitutional claim against Commissioner Magnusson to the jury based on the one response to the September 26, 2006 - based grievance on some sort of supervisory or failure to intervene theory. See, e.g., Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009) ("We agree with the reasoning in our previous unpublished decisions that a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983. ... Because Gallagher's only allegations involving these defendants relate to the denial of his grievances, he has not adequately alleged any factual basis to support an "affirmative link" between these defendants and any alleged constitutional violation.")(internal citations omitted); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) ("In the present case, Shehee's only allegations against Crosley, Hambrick, Henry and Miner involve their denial of his administrative grievances and their failure to remedy the alleged retaliatory behavior. With respect to Luttrell, Shehee's only claim is Luttrell's alleged failure to intervene on Shehee's behalf. There is no allegation that any of these defendants directly participated, encouraged, authorized or acquiesced in the claimed retaliatory acts against Shehee, nor is there any evidence that these defendants violated Shehee's right to equal protection under the law. Accordingly, we

hold that as a matter of law Crosley, Hambrick, Henry, Miner and Luttrell neither committed a constitutional violation nor violated a clearly established right to which Shehee was entitled."); Thomas v. Courtroom Deputy for Judge Ronan, Civ. No. 10-0536-PHX-RCB (EV), 2010 WL 2292947, 2 (D. Ariz. June 8, 2010)("[W]here a defendant's only involvement in allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy the alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983.")(citing Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir.1999), Mintun v. Blades, No. CV-06-139-BLW, 2008 WL 711636 at *7 (D.Idaho Mar. 14, 2008), and Stocker v. Warden, No. 1:07-CV-00589LJODLBP, 2009 WL 981323 at * 10 (E.D.Cal. Apr. 13, 2009)); Guillory v. Tilton, Civ. No. 07-00775-ROS (PC), 2010 WL 2232390, 2 (E.D.Cal. June 3, 2010) ("The proposed amended complaint alleges it is reasonable and probable these Defendants knew the practices had been occurring based on numerous 602 appeals submitted by other inmates prior to the violations allegedly committed against Plaintiff. This allegation fails to state a claim because there is no "supervisory liability" under § 1983 based purely on a supervisor's knowledge that employees have committed constitutional violations; government officials are only liable for their own misconduct. ….Plaintiff fails to allege any purposeful conduct by these Defendants that violated his constitutional rights."); compare Whitten v. Blaisdell, Civ. No. 09-450-SM, 2010 WL 376903, 5 (D.N.H. 2010) (post-Iqbal supervisory liability) (recommended decision on motion to dismiss) ("Whitten states that he grieved the inadequacy of his medical treatment to MacLeod, to Blaisdell, and then on to Wrenn. These supervisory officials, by doing nothing, led Whitten to continue to receive inadequate medical care.").

14

I pause only to remark on two aspects of Marino's factual showing. First, Marino's suggestion that the ultimate settlement of Sergeant O'Farrell's termination arrangement has any materiality to his claim that Magnusson is liable to him for Sergeant O'Farrell's conduct that day has no legal merit. See, e.g., Bury v. Bradish, No. 1:05-cv-00600-LJO-GSA PC, 2008 WL 2131566, 3 (E.D.Cal. 2008) (recommended decision). Second, I acknowledge that the lengthy letter to Magnusson in early August 2007 admittedly pre-dated the August 24, 2007, (relatively minor) disagreement with Officer Tripp and provided some sort of notice to Magnusson of Marino's dissatisfaction with his prior grievance responses. Marino has not attempted to bring the content of that letter into his statement of material fact in a fashion that would warrant consideration vis-à-vis Magnusson's motion for summary judgment. Furthermore, this letter complains of the handling of his grievances by the grievance officer, the rebuff he experienced from the Advocate, his contention that certain non-defendant officers did not allow him writing utensils when he was on suicide watch in March 2007, and then lost his paperwork, and generally explaining why Marino holds the Commissioner responsible for the grievance system. (Letter to Magnusson at 1-6, Doc. No. 99-1.) In this letter he asserts that the technical problems he has had with the mismanaged grievance system reflect acts of retaliation and, with respect to other forms of retaliation speaks of the September 26, 2006, incident and seems to refer to the December 6, 2006, shackling of him. (Id. at 5-6.) It does not mention Officer Tripp. Furthermore, it is not a formal grievance requiring a response. In fact, it is framed in the end as a forewarning that Marino intended to sue Magnusson and many of the prison's employees. I am confident that even if Marino had adequately incorporated the substance of this letter into the summary judgment record it would not be sufficient to create a genuine dispute of fact apropos

Marino's necessary showing that Magnusson was affirmatively linked to the alleged incident of retaliation by Officer Trip on August 24, 2007.[9]

*State Law Claim*

In responding to Magnusson's motion for summary judgment Marino defends only his third count, arguing that Magnusson "recklessly inflicted emotional distress upon the plaintiff."

"To withstand a defendant's motion for summary judgment on a claim of intentional infliction of emotional distress," under Maine law," a plaintiff must present facts in support of each of the following four elements:"

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct;
> (2) the conduct was so "extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community";
> (3) the actions of the defendant caused the plaintiff's emotional distress; and
> (4) the emotional distress suffered by the plaintiff was "so severe that no reasonable [person] could be expected to endure it."

Curtis v. Porter, 2001 ME 158, ¶ 10, 784 A.2d 18, 22 -23 (quoting Champagne v. Mid-Maine Med. Ctr.,1998 ME 87, ¶ 15, 711 A.2d 842, 847 in turn quoting Loe v. Town of Thomaston, 600 A.2d 1090, 1093 (Me.1991)) (footnote omitted). Curtis recognized that "a defendant may be liable for intentionally or recklessly inflicting emotional distress." 2001 ME 158, ¶ 10 n.9, 784 A.2d at 23 n.9.

Marino concedes in defending Magnusson's motion that he only filed a notice of claim with the Attorney General's Office with regards to the September 6, 2006, incident. Based on the above discussion this defeats any possible Maine Tort Claim against the Commissioner as to post September 26, 2006, events, see 14 M.R.S. § 8107(1); Smith v. Voisine, 650 A.2d 1350,

---

[9] I refrain from commenting on the merits of this claim as it relates to Tripp in the context of Magnusson's motion.

1352 -53 (Me. 1994), and Magnusson had no part whatsoever in the events leading up to and during that confrontational episode.  I add that even if § 8107(1) were not in play, Marino's argument that Magnusson could be held liable for the reckless infliction of emotional distress on the facts of this summary judgment record is, to put it mildly, frivolous.

## *Conclusion*

For these reasons I recommend that the Court grant Magnusson judgment on all three counts of Marino's complaint.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

June 30, 2010.