UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

TINO MARINO,                )
                            )
    Plaintiff,               )
                            )
v.                          ) Civil No. 8-326-B-S
                            )
COMMISSIONER, MAINE DEPARTMENT OF )
CORRECTIONS, et al.,         )
                            )
    Defendants               )
                            )

**RECOMMENDED DECISION ON MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT
JEFFREY MERRILL (Doc. No. 74)**

Tino Marino, who is proceeding on a third amended complaint, is suing nine defendants for his alleged mistreatment when he was[1] an inmate at the Maine State Prison. Herein I address a hybrid motion to dismiss/motion for summary judgment filed by the former Warden of the Maine State Prison, Jeffrey Merrill. On September 26, 2006, Marino first got into disciplinary trouble when he began talking to another inmate who was 'locked in,' thereby infringing prison rules. In response to an order by Officer Hirsh, the officer on duty in Marino's unit that night, restricting Marino to his cell for refusing to stop talking with this inmate (a practice called 'tagging'), Marino expressed his incredulity and Marino grabbed his genitals with both hands as he walked towards his cell. This conduct led Hirsch to order Marino to see the sergeant on duty, former Sergeant James O'Farrell, Jr. There is no dispute, that as a consequence of the meeting with Sergeant O'Farrell, Officer King ("the rover" for the unit), and Officer Hirsch, Marino was ordered by Sergeant O'Farrell to walk back to his cell holding his genitals, an order with which Marino complied while being escorted by Officers King and Hirsch and Sergeant O'Farrell.

---

[1] According to a recent affidavit submitted by Marino's attorney, Marino is currently living in Lubec, Maine. (Campbell May 24, 2010, Aff. ¶ 2, Doc. No. 139-2.)

Marino's lawsuit, as tweaked by Marino over the course of this litigation, also involves incidents on December 7, 2006, February 1, 2007, and August 24, 2007, all which Marino links to his theory that these subsequent events were spurred by retaliatory motivation. Based on the summary judgment record below and for the reasons that follow, I recommend that the Court grant summary judgment in favor of Jeffrey Merrill as Marino has failed to create a genuine dispute of fact material to the issue of whether Merrill was affirmatively linked as a supervisor to Marino's alleged mistreatment at the hands of the prison employees directly involved in the identified incidents.[2] With regards to the two counts under state law, I recommend that the court grant judgment in favor of Merrill because Marino does not defend his assault count as against Merrill and he is clearly not entitled to a trial on a reckless infliction of emotional distress count against this defendant.[3]

## DISCUSSION

**Summary Judgment Standard**

"The judgment sought" by Jeffrey Merrill, "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c)(2). The purpose of summary judgment " 'is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.' " Coyne v. Taber Partners I, 53 F.3d 454, 457 (1st Cir. 1995) (quoting Wynne v. Tufts Univ. School Med., 976 F.2d 792, 794 (1st Cir. 1992).) "A Rule 56 motion may well end the case

---

[2] It may be that this defendant is entitled to dismissal based on the complaint allegations against him. However, as with the other six defendants who have also filed hybrid motions, I elect to proceed with the summary judgment analysis in the interest of definitively determining as to all the defendants -- in one round of recommended decisions and objections -- if there are any claims that deserve proceeding to trial. Defendants O'Farrell, Jr. and King have moved for summary judgment only, King having unsuccessfully moved for dismissal earlier in this action and O'Farrell apparently recognizing that such a motion would have been futile in his case.

[3] Marino "concedes the point that the claims against the defendants in their official capacity w[ere] ill conceived" and subject to dismissal. (Resp. Mem. Merrill Dispositive Mot. at 5 n. 2.)

unless the party opposing it demonstrates the existence of a trialworthy issue as to some material fact." Id.

**Supervisory Liability**

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" Ashcroft v. Iqbal, 556 U.S. __, __, 129 S. Ct. 1937, 1948 (2009). A plaintiff must establish "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. at 1948-49. Mere knowledge of a subordinate's wrongful conduct does not establish Section 1983 liability for a supervisor. Rather, there must be an affirmative link between the conduct of the supervisor and the constitutional deprivation experienced by Marino. See Sanchez v. Pereira-Castillo, 590 F.3d. 31, 49 (1st Cir. 2009); Maldonado, 568 F.3d at 274-75; Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005). Examples of affirmative links include "supervisory encouragement, condonation or acquiescence" in relation to the deprivation. Maldonado, 568 F.3d at 275 (quoting Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008)). Deliberate indifference can also result in supervisory liability. Id. This case lacks evidence of an affirmative link between Merrill and the officers who alleged to have violated his rights.

In his response to Merrill's motion for summary judgment, Marino summarizes his theory of recovery as against the Former Warden Merrill as follows:

> Marino's complaint alleges the constitutional violation of plaintiff's right to be free from cruel and unusual punishment secured by the 8th Amendment of the United State[s] Constitution. Count One alleges that subordinates of Jeffrey Merrill, Warden for the Maine State Prison, forced Marino to grasp his genitals tightly and to walk down a prison hallway so that others could witness Marino's humiliation and pain. Plaintiff's Third Amended Complaint ¶ 9.1 Plaintiff's Complaint goes on to allege retaliatory actions by the other named defendants which included the tearing up of plaintiff's grievances which detailed the defendants' retaliatory actions and numerous physical assaults of Marino when he refused to stop pursuing his legal rights. Id. at ¶¶ 8-14. Marino's complaint states

3

that, as the Warden, it was defendant Merrill's responsibility to supervise and oversee the management of his subordinates. Id. at ¶¶ 2, 15. Plaintiff's complaint goes on to state that having that responsibility and the knowledge of these retaliatory actions, the Warden displayed deliberate indifference by failing to take appropriate remedial actions to prevent further abuse of Marino by Maine State Prison employees. Id. For these reasons, Marino has demonstrated that his allegations were well-pleaded and are sufficient to "nudge" his claim of deliberate indifference.

(Resp. Mem. Merrill Dispositive Mot. at 4.)

Marino's theory of Merrill's liability based on the record is as follows:

> Marino, in this case, suffered physical injury and pain as a direct result of the defendants' actions or omissions. Jeffrey Merrill was the Warden of the Maine State Prison during the period of Marino's incarceration. Jeffrey Merrill Affidavit ¶ 2. As the Warden of the Maine State Prison, Merrill was responsible for the overall management of the Prison. Id. at ¶ 3. Within those responsibilities is the implementation and oversight of screening and training of employees. Every other defendant named in the complaint was employed by the Maine State Prison at all times material to this litigation. …
> ….
> As Warden, Merrill was informed of the incident which occurred on September 26, 2006 and assigned an officer to investigate that incident. Id. at ¶¶ 9-11. Merrill granted Marino's grievance resulting from the September 26th incident stating that staff misconduct and unprofessional behavior would not be tolerated at the Maine State Prison. Id. at ¶ 20. Merrill then took no further action citing the discharge of Sergeant O'Farrell as a resolution to the problem. Id. What Defendant Merrill forgets to say is that <u>with his tacit approval</u> as supervisor, Defendant Sergeant O'Farrell was given a nice pat on the back, and $10,000, plus an expungement of any disciplinary action in return for a voluntary resignation. See O'Farrell Jr. Resignation. Marino began to suffer incidents of retaliation from prison guards which Marino submitted additional grievances for. Marino Affidavit ¶ 32. Marino wrote a total of forty-one grievances, a number of which documented incidents of retaliation following the September 26, 2006 incident. Marino Deposition pg. 90 lines 1-25. Incidents of retaliation included the tearing up of Marino's grievances and other legal work, as well as numerous assaults. Marino Affidavit pgs 65-67, 71-72, 76, 77-80, 83-85. On December 6, 2006, the Warden personally spoke with Marino. Jeffrey Merrill Affidavit ¶ 21. During that conversation, Marino reiterated the pattern of retaliation he was suffering and the Warden told Marino to stop filing grievances and pursuing his legal work. Marino Affidavit ¶ 36. Retaliatory actions by the prison guards continued and Marino wrote numerous grievances concerning those incidents which were reviewed by the Warden who took no action to prevent or curtail such actions by prison officers. Marino Affidavit ¶ 75. The defendant's actions and omissions as described, demonstrate the unnecessary and wanton infliction of pain upon Marino.

4

(Resp. Mem. Merrill Dispositive Mot. at 4) (emphasis added).

*Material Facts*

Marino was incarcerated at the Maine State Prison from September 21, 2006, until March 20, 2008. (SMF ¶ 1; Resp. SMF ¶ 1.) Jeffrey Merrill was the Warden of the Maine State Prison during the period of Marino's incarceration. (SMF ¶ 2; Resp. SMF ¶ 2.) As Warden at the Maine State Prison, Merrill was responsible for the overall management of the prison. (SMF ¶ 3; Resp. SMF ¶ 3.) Merrill was not present for any of the incidents involving Marino alleged in the complaint on September 26, 2006, December 7, 2006, February 1, 2007, and August 24, 2007. (SMF ¶ 4; Resp. SMF ¶ 4.)

On or about October 5, 2006, Merrill received a memorandum from the Advocate at the Maine Sate Prison, Ann Rourke, detailing a complaint by Marino regarding an incident alleged to have occurred on the Medium Unit on September 26, 2006, involving Sergeant James E. O'Farrell and two other corrections officers, Officers Jeffrey King, and Nova Hirsch. (SMF ¶ 5; Resp. SMF ¶ 5; SAMF ¶ 14; Resp. SAMF ¶ 14.) The supervising officer involved was Sergeant James E. O'Farrell. (SMF ¶ 6; Resp. SMF ¶ 6.) Sergeant James E. O'Farrell is the son of Deputy Warden James O'Farrell. (SMF ¶ 7; Resp. SMF ¶ 7.) (See SAMF ¶¶ 2-13.)

Deputy Warden O'Farrell is the Deputy Warden in charge of security at the Maine State Prison and worked in that capacity during the period of Marino's incarceration. (SMF ¶ 8; Resp. SMF ¶ 8.) Merrill was also informed that on October 11, 2006, Marino met with the Unit Manager of the Medium Unit, Russell Worcester, and informed him of his allegations regarding the incident on September 26 2006. (SMF ¶ 9; Resp. SMF ¶ 9.)

Based on this complaint, on October 12, 2006, Merrill assigned the Unit Manager of the Close Unit, Dwight Fowles, to investigate the alleged incident on September 26, 2006. (SMF ¶

10; Resp. SMF ¶ 10; Resp. SAMF ¶ 16.)  Merrill specifically directed that Unit Manager Fowles report the results of the investigation to Deputy Warden Riley.  (SMF ¶ 11; Resp. SMF ¶ 11.)  Because of the familial relationship, Deputy Warden James O'Farrell was specifically not allowed to be involved with the investigation of his son and the alleged incident of September 26, 2006.  (SMF ¶ 12; Resp. SMF ¶ 12.)  Dwight Fowles completed the investigation on October 25, 2006, and made recommendations based on this investigation.  (SMF ¶ 13; Resp. SMF ¶ 13.)

Sergeant James E. O'Farrell was placed on administrative leave on November 16, 2006.  (SMF ¶ 14; Resp. SMF ¶ 14.)  Based on this investigation and the subsequent recommendations, Sergeant James E. O'Farrell was then discharged from employment at the Maine State Prison on December 9, 2006.  (SMF ¶ 15; Resp. SMF ¶ 15.)  Based on this investigation and the subsequent recommendations, Officer Jeffrey King received a two day suspension without pay with one day held in abeyance for ninety days.  (SMF ¶ 16; Resp. SMF ¶ 16.)  There was no disciplinary action taken against Officer Nova Hirsch.  (SMF ¶ 17; Resp. SMF ¶ 17.)

Merrill was never contacted by Deputy Warden James O'Farrell during the pendency of the investigation and only spoke with him regarding the incident to inform him that his son Sergeant James E. O'Farrell had been discharged from employment at the prison.  (SMF ¶ 18; Resp. SMF ¶ 18.)

Marino maintains that after filing this grievance he began to experience retaliation from other (unidentified) guards and prison employees.  (SAMF ¶ 15; Marino Aff. ¶¶ 29-34.)  Merrill responds that Merrill, Dr. Rubano, and Commissioner Magnusson all aver that they never learned of any information corroborating Marino's claims of retaliation by the staff at the prison.  (Resp. SAMF ¶ 15; Merrill Aff. ¶ 32; Rubano Aff. ¶¶ 5,6; Magnusson Aff. ¶ 19.)

On November 21, 2006, Merrill received a second level grievance appeal regarding the September 26, 2006, incident, Grievance No. 06-MSP-360. (SMF ¶ 19; Resp. SMF ¶ 19.) On December 19, 2006, Merrill granted Marino's grievance for the stated reason that staff misconduct and unprofessional behavior would not be tolerated at the Maine State Prison. Merrill took no further action as the issue had been resolved and the responsible supervisor was no longer working at the prison. (SMF ¶ 20; Resp. SMF ¶ 20.)

On or about December 6, 2006, Merrill informally spoke with Marino when he saw him on a routine tour of the prison and informed Marino that the issue regarding the incident of September 26, 2006, was being addressed. (SMF ¶ 21; Resp. SMF ¶ 21; Resp. SAMF ¶ 16.) Robert Costigan, the Grievance Review Officer at the Maine State Prison at the time, was present during this conversation with Marino. (SMF ¶ 22; Resp. SMF ¶ 22.) It is Marino's contention that he reiterated to Merrill during this conversation that he was being retaliated against and Merrill told him to stop pursuing his legal work. (Resp. SMF ¶¶ 21, 22; Marino Aff. ¶ 36; Marino Dep. at 60:10-25; SAMF ¶ 16.) Merrill insists that he never told Marino that he could not file any grievances or legal action during this conversation or at any other time. (SMF ¶ 23; Merrill Aff. ¶ 23; Costigan Aff. ¶ 16; Resp. SAMF ¶ 16.) Merrill never told any staff member of the Maine State Prison to prevent Marino from filing grievances or legal action. (SMF ¶ 24; Merrill Aff. ¶ 24.)[4]

Marino wrote detailed letters concerning an incident which took place on December 7, 2006, (see SAMF ¶¶ 21-39) to both Deputy Warden Riley on December 13, 2006, and to Warden Merrill on December 19, 2006. (SAMF ¶ 40; Resp. SAMF ¶ 40.)

On December 18, 2006, Merrill received a letter from Marino. (SMF ¶ 25; Resp. SMF ¶ 25.) This letter referenced Merrill's conversation with Marino and included a litany of

---
[4] Marino admits that he has no information to counter this paragraph. (Resp. SMF ¶ 23.)

complaints but never indicated that Merrill had told Marino not to file grievances. (SMF ¶ 26; Resp. SMF ¶ 26.) Based on Marino's letter and subsequent disciplinary problems, Merrill specifically wrote to the Advocate Anne Rourke on December 8, 2006, requesting that she assist Marino as Marino appeared to have some mental health issues and did not seem to understand the grievance process. (SMF ¶ 27; Resp. SMF ¶ 27; Resp. SAMF ¶ 16.) After the incident with Sergeant James E. O'Farrell, Merrill received numerous grievance appeals from Marino, some of which claimed retaliation by staff because of the incident. These were all investigated and found to be without basis. (SMF ¶ 28; Merrill Aff.¶ 28.)[5]

There was another incident involving use of force on Marino on February 1, 2007. (SAMF ¶¶ 45-48; Resp. SAMF ¶ 45-48.) Marino maintains that he submitted a grievance regarding this incident that was never processed. (SAMF ¶ 49; Marino Aff. ¶ 72.) Merrill responds that Marino fails to identify who did not process the grievance and points out that Merrill never received a grievance appeal regarding this incident. (Resp. SAMF ¶ 49; Merrill Aff. & Ex. 1.)

Marino filed forty-one grievances. (SMF ¶ 29; Resp. SMF ¶ 29.) Marino insists that prior to his meeting with Merrill he had filed grievances reporting not only the September 26, 2006, but also the numerous incidents of retaliation Marino had been experiencing as a result of filing grievances (SAMF ¶ 17) however the paragraph of his affidavit he cites for this proposition does not support this assertion beyond that he told Merrill he was being retaliated against and Merrill in some way acknowledged this complaint during the conversation (Marino Aff. ¶ 37; see also SAMF ¶ 20). Merrill insists that this conversation was about the September 26, 2006, incident and he never found any information to corroborate Marino's allegation of

---

[5] Citing only paragraphs of his complaint, Marino attempts to qualify this paragraph by asserting that a complete and objective investigation would have found those grievances to possess a sufficient basis. (Resp. SMF ¶ 28.)

8

retaliation. (Resp. SAMF ¶ 20; Merrill Aff. ¶¶ 21, 32; Costigan Aff. ¶ 16.) Marino filed thirty-six of these grievances after the conversation with Jeffrey Merrill. (SMF ¶ 30; Resp. SMF ¶ 30; Resp. SAMF ¶¶ 17, 18.) Marino filed nineteen second level appeals of his grievances. (SMF ¶ 31; Resp. SMF ¶ 31.)

Dr. Maureen Rubano, the psychologist in charge of the Mental Health Unit at the Prison, informed Merrill during the course of investigating some of these grievance appeals that, in her opinion, Marino's complaints arose from his personality disorder and his inability to comply with the rules and regulations of the prison rather than actual events. (SMF ¶ 32; Resp. SMF ¶ 32.)

On April 18, 2007, Merrill received another letter from Marino that mentioned the incident with Sergeant James E. O'Farrell and alleged retaliation because of that incident. (SMF ¶ 33; Resp. SMF ¶ 33; SAMF ¶ 43; Resp. SAMF ¶ 43.) Merrill responded to Marino in a letter dated April 27, 2007. (SMF ¶ 34; Resp. SMF ¶ 34.) At no time did Merrill ever learn of information corroborating Marino's claim that the staff at the prison were targeting or harassing Marino in retaliation for his complaint against Sergeant James E. O'Farrell. (SMF ¶ 35; Resp. SMF ¶ 35.)

On August 24, 2007, Marino had a verbal confrontation with Officer Tripp about his right to do legal work rather than do laundry duty. (SAMF ¶ 51; Resp. SAMF ¶ 51.) Marino asked for a grievance form and Tripp provided him with one. (SAMF ¶ 52; Resp. 52.) As a consequence of this dispute Marino was transferred to A-2 of the Mental Health Unit. (SAMF ¶54; Resp. SAMF ¶ 54.)

On August 25, 2007, Marino wrote a letter to Commissioner Magnusson detailing his allegations of retaliatory conduct by prison guards towards him and abuses of the grievance process. (SAMF ¶ 50; Resp. SAMF ¶ 50; Doc. No. 99-1.)

According to Marino, he suffers, as a direct result of these incidents, genital pain, migraine headaches, severe skin issues due to numerous applications of mace, stomach problems related to ulcers as well as constipation as a result of stress, and severe heart pain and panic attacks five to ten times a day due to Post Traumatic Stress Disorder. (SAMF ¶ 57; Marino Aff. ¶¶ 140-147.) Merrill responds that Marino has not provided an expert witness designation for a medical professional who would be competent to testify to the alleged aggravation of Marino's condition. (Resp. SAMF ¶ 57; Hallisey-Swift Aff. ¶ 4.)

Marino testified at his deposition that he felt free to write letters to Jeffrey Merrill or to anyone he wanted to write letters to and he felt it was okay to file grievances. (SMF ¶¶ 36, 37; Marino Dep. at 62:14 -19; SAMF ¶ 18; Resp. SAMF ¶ 18.) Marino opines:

> The plaintiff may have felt "okay" to write letters to anyone he wanted to but noted that "if someone who owns the – who runs the prison is going to tell you these things (referring to Defendant Merrill telling the plaintiff not to file grievances or conduct legal work) and then the next day you get physically beat on and thrown in seg and you get tortured while you're down there and nobody does nothing about it after he just told you, well, we know what happened and my officers better not be retaliating against you, but then he does nothing to get me out of seg and I'm getting physically beat on until I try to hang myself and it gets to that point…[y]ou start doing what you have to do to not get beat on, not get killed, you understand?"

(Resp. SMF ¶¶ 36, 37; Marino Dep. at 61:22-62:13.) He avers that he had numerous attempts to file grievances thwarted by employees at the Maine State Prison. (Marino Aff. ¶ 62-67.) He states that incidents of retaliation included tearing up his grievances and other legal work, as well

10

as numerous assaults. (SAMF ¶ 19; Marino Aff. ¶¶ 65-67, 71-72, 76, 77-80, 83-85.)[6] Marino insists that after December 7, 2006, many of his grievances were not processed or officers refused to sign them. (SAMF ¶ 44; Marino Aff. ¶¶ 61, 62; Grievance No. 07 MSP 401.) Merrill responds that Marino filed thirty-six grievances after December 7, 2006, and the grievances were accepted unless they did not comply with the grievance policy. (Resp. SAMF ¶ 44; Costigan Aff. 6.)

Ira Scherr was a correctional officer from August 2003 to July 2008 and was a union representative for most of that time including being the President of the Correctional Officers Union. (SAMF ¶ 55; Scherr Jan. 6, 2010 Aff. at 1.) Ira Scherr reported a corporate culture of corruption, harassment, and retaliation <u>against</u> correctional officers by all levels of administration at the Maine State Prison to Commissioner Magnusson. (SAMF ¶ 56; Scherr Apr. 22, 2010, Aff. ¶¶ 4- 14; Resp. SAMF ¶ 56) (emphasis added).

Marino's attorney in this action, requested a copy of any and all videos regarding the alleged incidents from the defendants through discovery and was only provided with two videos neither of which depict the above-referenced incidents. (SAMF ¶ 62; Resp. SAMF ¶ 62.) Former Officer at the Maine State Prison, Ira Scherr, stated that the prison has a history of destroying documents and evidence in disciplinary cases involving investigation into employee conduct. (SAMF ¶ 63; Scherr Apr. 22, 2010, Aff. ¶ 15; Resp. SAMF ¶ 63.)

There is no dispute as to the following two tidbits, the first relevant to the disposition of this motion and the second immaterial. Marino filed only one notice of tort claim with the Office

---

[6] Marino attempts to tie in an incident with Officer Tripp on the day following his December 6, 2006, conversation with Merrill by asserting that he told Merrill that he would not stop filing grievances. (SAMF ¶21.) His record citations do not support the assertion that he told Merrill he would continue to file grievances. (Letter to Merrill at 2; Letter to Riley at 3; Dec. 7, 2006, Rubano Report.)

of the Attorney General for the incident on September 26, 2006. (SMF ¶ 38; Resp. SMF ¶ 38.) Sergeant O'Farrell's firing was expunged from the record. (SAMF ¶ 64; Resp. SAMF ¶ 64.)

*Analysis*

    *Constitutional Claim[7]*

First, with regards to the September 26, 2006, incident, there is no cognizable evidence in this record that Merrill could have done anything to forestall the conduct of the officers involved. The evidence is that he specifically directed that Fowles conduct an investigation and followed through with disciplinary action against Sergeant O'Farrell and Officer King. With respect to subsequent complaints by Marino that reached Merrill, the parties have not actually parsed out in their competing statements of fact what Merrill was made cognizant of and when.

The record contains an exhibit that includes fourteen second level grievance responses by Merrill. (See Doc. No. 124-10.) These are as follows:

- 06 MSP 360. Response on December 19, 2006: Grievance of the September 26, 2006, incident.
- 06 MSP __. Response on December 29, 2006: Grievance of placement into SMU on October 19, 2006 for mental health reasons.
- 06 MSP 378. Response on January 2, 2007: Grievance regarding staff discouragement of filing a medical grievance. *Warden Merrill indicates that Marino did not approach the appropriate unit manager to sign his medical grievance as it had to be a supervisor with jurisdiction over the medical grievance.*
- 06 MSP 379. Response on January 2, 2007: Grievance regarding access to grievance forms. *Warden Merrill indicates that there was a four hour delay in access to the forms because Marino was being transferred from SMU back into the general population.*
- 07 MSP 096. Response on May 3, 2007: Grievance of a claim of excessive force on March 5, 2007.
- 07 MSP 105. Response on May 17, 2007: Grievance concerning paper restrictions in the SMU. *Warden Merrill indicates restriction resulted from Marino's unwillingness to follow prison rules and that the restrictions would be lifted when he decides to not use paper products to block cell vents.*

---

[7] There is no dispute in this litigation that, with respect to Marino's Count One claim, his theory of liability under the United States Constitution and the Maine Constitution are congruent and that this court can analyze the claims through the prism of 42 U.S.C. § 1983 jurisprudence. On this score I further note that Marino captions this count as one brought pursuant to 42 U.S.C. § 1983 but does mention the Maine Constitution in Paragraph 10 of his Third Amended complaint.

- 07 MSP 269. Response on November 11, 2007: Grievance regarding mental health, treatment and confinement issues in the SMU.
- 07 MSP 405. Response January 11, 2008: Grievance that Marino was unfairly removed from the Mental Health Unit and that the staff has retaliated for pursuit of legal action and contact with outside agencies. *Warden Merrill indicates that Marino has been followed closely by mental health and caseworker staff and seen frequently. With respect to grievance issue, remarks that he found no evidence that staff thwarted access to legal pursuits or retaliation for outside contacts and the Advocate has been available to Marino.*
- 07 MSP 435. Response February 14, 2008: Grievance that staff at SMU engaged in retaliation by locking him in. *Warden Merrill indicates that Marino was locked in on November 14, 200, for refusing an order and verbal aggression.*
- 07 MSP 451. Response February 14, 2008. Grievance concerning prisoner mail. *Warden Merrill indicates that mail from the Department of Justice is not privileged unless the return address contained the name and title of a DOJ official.*
- 08 MSP 31. Response March 4, 2008: Grievance that a supervisor would not sign his grievance(s). *Warden Merrill indicates that it was explained to Marino the need to clarify his complaints so that the supervisor with jurisdiction could understand the issues, attempt an informal resolution, and feel comfortable signing it.*
- 08 MSP 44. Response March 13, 2008. Grievance regarding staff conduct.
- 08 MSP 56. Response March 18, 2008. Grievance of staff mistreatment on January 30, 2008.
- 08 MSP 57. Response March 20, 2008. Grievance of the return of a grievance. *Warden Merrill indicates that Marino filed a separate grievance when the first one was not signed by the supervisor with jurisdiction and promising that a corrected copy of the receipt of Client Grievance Form II would be sent.*

The only showing Marino has made with regards to his grievance attempts is dependent on his six attached grievances:

- 06 MSP 360. The fully grieved September 26, 2006, incident.
- 06 MSP 416. Returned for an attempt at an informal resolution by a supervisor with jurisdiction (Doc. No. 101-3 at 2).
- 07 MSP 24. Returned for an attempt at an informal resolution by a supervisor with jurisdiction (Doc. No. 101-4 at 3).
- 07 MSP 276. Denied because it was filed after 15 days and did not qualify for expedited status (Doc. No. 101-5 at 7).
- 07 MSP 401. Returned for an attempt at an informal resolution by a supervisor with jurisdiction (Doc. No. 101-6 at 14).
- 07 MSP 402. Date received October 19, 2007- Returned for an attempt at an informal resolution by a supervisor with jurisdiction (Doc. No. 101-7 at 4); Date received December 26, 2007 - Denied because it was filed after 15 days and did not qualify for expedited status (Doc. No. 101-7 at 19).

Marino has presented no evidence to rebut Merrill's assertion that at no time did Merrill ever learn of information corroborating Marino's claim that the staff at the prison were targeting or harassing Marino in retaliation for his complaint against Sergeant James E. O'Farrell. He states only that he cannot speak to the Warden's state of mind and contends that Merrill had a "duty to be aware of the information available." (Resp. SMF ¶ 35.) This assertion runs headlong into the the Iqbal/ Maldonado green-zone protection for supervisors who are not directly involved or affirmatively linked to the conduct of those formally under their supervision.

It is evident that this record is insufficient to warrant sending a constitutional claim against Jeffrey Merrill to the jury on some sort of supervisory or failure to intervene theory. See, e.g., Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009) ("We agree with the reasoning in our previous unpublished decisions that a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983. ... Because Gallagher's only allegations involving these defendants relate to the denial of his grievances, he has not adequately alleged any factual basis to support an "affirmative link" between these defendants and any alleged constitutional violation.")(internal citations omitted); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) ("In the present case, Shehee's only allegations against Crosley, Hambrick, Henry and Miner involve their denial of his administrative grievances and their failure to remedy the alleged retaliatory behavior. With respect to Luttrell, Shehee's only claim is Luttrell's alleged failure to intervene on Shehee's behalf. There is no allegation that any of these defendants directly participated, encouraged, authorized or acquiesced in the claimed retaliatory acts against Shehee, nor is there any evidence that these defendants violated Shehee's right to equal protection under the law. Accordingly, we hold that as a matter of law Crosley, Hambrick, Henry, Miner and Luttrell

neither committed a constitutional violation nor violated a clearly established right to which Shehee was entitled."); Thomas v. Courtroom Deputy for Judge Ronan, Civ. No. 10-0536-PHX-RCB (EV), 2010 WL 2292947, 2 (D. Ariz. June 8, 2010)("[W]here a defendant's only involvement in allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy the alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983.")(citing Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir.1999), Mintun v. Blades, No. CV-06-139-BLW, 2008 WL 711636 at *7 (D.Idaho Mar. 14, 2008), and Stocker v. Warden, No. 1:07-CV-00589LJODLBP, 2009 WL 981323 at *10 (E.D.Cal. Apr. 13, 2009)); Guillory v. Tilton, Civ. No. 07-00775-ROS (PC), 2010 WL 2232390, 2 (E.D.Cal. June 3, 2010) ("The proposed amended complaint alleges it is reasonable and probable these Defendants knew the practices had been occurring based on numerous 602 appeals submitted by other inmates prior to the violations allegedly committed against Plaintiff. This allegation fails to state a claim because there is no "supervisory liability" under § 1983 based purely on a supervisor's knowledge that employees have committed constitutional violations; government officials are only liable for their own misconduct. ….Plaintiff fails to allege any purposeful conduct by these Defendants that violated his constitutional rights."); compare Whitten v. Blaisdell, Civ. No. 09-450-SM, 2010 WL 376903, 5 (D.N.H. 2010) (post- Iqbal supervisory liability) (recommended decision on motion to dismiss) ("Whitten states that he grieved the inadequacy of his medical treatment to MacLeod, to Blaisdell, and then on to Wrenn. These supervisory officials, by doing nothing, led Whitten to continue to receive inadequate medical care.").

Five aspects of Marino's factual showing (or lack thereof) vis-à-vis his claim against Merrill deserve remark. First, Marino's suggestion that the ultimate settlement of Sergeant

O'Farrell's termination arrangement has any materiality to his claim that Merrill is liable to him for Sergeant O'Farrell's conduct that day is temporally and legally wayward.  See, e.g., Bury v. Bradish, No. 1:05-cv-00600-LJO-GSA PC, 2008 WL 2131566, 3 (E.D.Cal. 2008) (recommended decision).

Second, Ira Scherr's conclusory report of a corporate culture of corruption, harassment, and retaliation <u>against</u> correctional officers by all levels of administration at the Maine State Prison to Commissioner Magnusson is at best immaterial to Marino's claims concerning officers' treatment of inmates as described in Marino's factual presentation.

Third, with regards to Merrill's early December conversation with Marino regarding the September 26, 2006, incident, and Marino's contention that Merrill told him to stop filing grievances and doing legal work, the actual portion of the deposition cited in support of the contention reads:

> I seen him – I seen him and his exact words – you know, I told him what was happening and he just told me, well, this is – this is the –he was with Bob Costigan, he's the grievance officer, and I says, your officers are retaliating against you, what are you going to do about it, and he says, well, if you have anymore problems, contact him, but he told me to stop working on my legal work. His exact words were stop working on your legal work. I says, what, why are you coming to me and telling me to stop working on my legal work, and he says, stop working on your legal work. He says, you['re] on the mental health unit, you need to stop working on your legal work, and I took that the wrong way.

(Marino Dep. at 60, Doc. No. 99-5.)  Obviously, this testimony does not support an inference that Merrill told him not to file grievances, particularly because Merrill did encourage Marino to contact Costigan and also wrote to the advocate requesting that she assist Marino with the grievance process.  The affidavit statement relied on does add a reference to Merrill's suggestion of not filing grievances but, in view of his full description of this conversation during his deposition, I can only view this April 2, 2010, affidavit statement as backfilling.  See  Orta-

16

Castro v. Merck, Sharp & Dohme Quimica P.R., Inc., 447 F.3d 105, 110 (1st Cir. 2006). While I am cognizant that Marino is entitled to have all reasonable inferences drawn in his favor at the summary judgment stage, he cannot manipulate the process in the context of an overall record that Merrill thoroughly investigated the September 26, 2006, incident and found his grievance allegations were substantiated, he discussed the grievance with Marino personally and told Marino to contact Costigan if he had anymore problems, and, assuming Merrill did tell Marino to stop working on his legal work, the only inference I see here is that this directive was not intended to stop Marino from taking legal action or filing grievances, but was a recommendation related to Marino's placement in a mental health unit. This may or may not have been suitable advice but it is also plenty evident that it did not coerce Marino into stopping his grievance efforts or interfere with his ability to bring this legal action.

Fourth, Marino has not identified the officers who allegedly thwarted attempts to file grievances including tearing up his grievances and other legal work, and who refused to sign his grievances. This assertion undermines his case against Merrill not because he would have to have named these individuals as defendants but because it is an admission that he was never able to bring the content of these grievances to Merrill's attention. Marino admits that he has no evidence to dispute Merrill's assertions that, one, he never told any Maine State Prison employee to prevent Marino from filing grievances and, two, at no time did Merrill ever learn of information corroborating Marino's claim that the staff at the prison were targeting or harassing Marino in retaliation for his complaint against Sergeant James E. O'Farrell.

Finally, there is no genuine dispute that Merrill did review and investigate numerous grievances filed by Marino during his tenancy at the prison and Marino has not meaningfully countered Merrill's representations that he did not find merit as to some and that there were

procedural shortfalls as to others. Merrill cannot be described as oblivious to Marino's complaints. Furthermore, there is no dispute that Dr. Maureen Rubano, the psychologist in charge of the Mental Health Unit at the Prison, informed Merrill during the course of investigating some of these grievance appeals that, in her opinion, Marino's complaints arose from his personality disorder and his inability to comply with the rules and regulations of the prison rather than actual events. It does not matter if Rubano's assessment was accurate; Marino has advanced no factual basis to cast doubt on Merrill's right at the time to rely on this opinion in reaching his grievance appeal determinations.

### *State Law Claim*

In responding to Merrill's motion for summary judgment Marino defends only his third count, arguing that Merrill "at least recklessly inflicted emotional distress upon the plaintiff." (Resp. Merrill Mot. Summ. J. at 12.) He opines: "The defendant's conduct has been shown to rise to the level of a constitutional violation and can therefore be regarded as atrocious and utterly intolerable in a civilized society…." (Id.)

"To withstand a defendant's motion for summary judgment on a claim of intentional infliction of emotional distress," under Maine law," a plaintiff must present facts in support of each of the following four elements:"

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct;
> (2) the conduct was so "extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community";
> (3) the actions of the defendant caused the plaintiff's emotional distress; and
> (4) the emotional distress suffered by the plaintiff was "so severe that no reasonable [person] could be expected to endure it."

Curtis v. Porter, 2001 ME 158, ¶ 10, 784 A.2d 18, 22 -23 (quoting Champagne v. Mid-Maine Med. Ctr.,1998 ME 87, ¶ 15, 711 A.2d 842, 847 in turn quoting Loe v. Town of Thomaston, 600 A.2d 1090, 1093 (Me.1991)) (footnote omitted).  Curtis recognized that "a defendant may be liable for intentionally or recklessly inflicting emotional distress."  2001 ME 158, ¶ 10 n.9, 784 A.2d at 23 n.9.

Marino concedes in defending Merrill's motion that he only filed a notice of claim with the Attorney General's Office with regards to the September 6, 2006, incident.  Based on the above discussion this defeats any possible Maine Tort Claim against the Commissioner as to post September 26, 2006, events, see 14 M.R.S. § 8107(1); Smith v. Voisine, 650 A.2d 1350, 1352 - 53 (Me. 1994), and Merrill had no part whatsoever in the events leading up to and during that confrontational episode.  I add that even if § 8107(1) were not in play, Marino's argument that Merrill could be held liable for the reckless infliction of emotional distress on the facts of this summary judgment record is -- despite his atrocious and utterly intolerable in a civilized society invective -- frivolous.

## *Conclusion*

For these reasons I recommend that the Court grant Merrill judgment on all three counts of Marino's complaint.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

June 30, 2010.