UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

TINO MARINO,                               )
                                           )
    Plaintiff,                         )
                                           )
v.                                         ) Civil No. 8-326-B-S
                                           )
COMMISSIONER, MAINE DEPARTMENT OF          )
CORRECTIONS, et al.,                       )
                                           )
    Defendants                         )
                                           )

**RECOMMENDED DECISION ON MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT CLARENCE TRIPP (Doc. No. 80)**

Tino Marino is suing multiple defendants alleging that his rights under the federal and state constitutions were violated when he was an inmate at the Maine State Prison. He also alleges that the defendants assaulted him and inflicted emotional distress in violation of state tort law. This recommended decision addresses a dispositive motion filed by correctional officer Clarence Tripp who had two encounters with Marino highlighted in this lawsuit, one on December 7, 2006, and the other on August 24, 2007. The federal claim is one of unconstitutional use of force in violation of Marino's right as a convicted inmate under the Eighth Amendment of the United States Constitution that prohibits cruel and unusual punishment. I recommend that the court grant this dispositive motion as to the constitutional count[1] and, with regards to the state law counts of assault and intentional infliction of emotional distress, Marino never filed a notice of claim as to these two incident and so he cannot proceed to trial on those supplemental state law claims.

---

[1] Marino "concedes the point that the claims against the defendants in their official capacity w[ere] ill conceived" and subject to dismissal. (See e.g., Resp. Mem. Prevot Mot. Summ. J. at 7 n. 2.)

# DISCUSSION

**Summary Judgment Standard**

"The judgment sought" by Clarence Tripp "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c)(2). The purpose of summary judgment "'is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Coyne v. Taber Partners I, 53 F.3d 454, 457 (1st Cir. 1995) (quoting Wynne v. Tufts Univ. School Med., 976 F.2d 792, 794 (1st Cir. 1992).) "A Rule 56 motion may well end the case unless the party opposing it demonstrates the existence of a trialworthy issue as to some material fact." Id.

*Facts*

Clarence Tripp is a correctional officer at the Maine State Prison and has been for approximately seven years. (SMF ¶ 1; Resp. SMF ¶ 1; SAMF ¶ 1; Resp. SAMF ¶ 1.) Officer Tripp was working as a correctional officer in the Mental Health Unit of the Maine State Prison on December 7, 2006. (SMF ¶ 2; Resp. SMF ¶ 2; SAMF ¶ 1; Resp. SAMF ¶ 1.) At this time, Marino was housed in the A-1 pod of the Mental Health Unit. (SMF ¶ 3; Resp. SMF ¶ 3.) Marino was housed in the Mental Health Unit from November 2, 2006, until December 7, 2006, and again from March 26, 2007, until November 27, 2007. (SMF ¶ 4; Resp. SMF ¶ 4.)

Dr. Maureen Rubano is the Director of the Mental Health Services at the Maine State Prison and in charge of the Mental Health Unit and has worked in that capacity since 2003. (SMF ¶ 5; Resp. SMF ¶ 5.) On December 4, 2006, Dr. Maureen Rubano made an individual treatment plan for Marino which included a requirement that Marino keep his cell clean and

orderly. (SMF ¶ 6; Resp. SMF ¶ 6.)  Dr. Rubano made this plan after being informed by correctional officers in the Mental Health Unit of Marino's inability to comply with the rules of the unit and the security concerns raised by his behavior. (SMF ¶ 7; Resp. SMF ¶ 7.)

On September 26, 2006, there was an incident with Marino involving defendants Sergeant O'Farrell, Officer King, and Officer Hirsch.[2]  Following the September 26, 2006, incident, Marino used the grievance process, filing a grievance on October 19, 2006. (SAMF ¶ 14; Marino Affidavit ¶ 29; Resp. SAMF ¶ 14; Costigan Aff. ¶ 11 & Ex. 1.)  According to Marino, after filing this grievance, Marino began to experience retaliation from "other guards" and prison employees at the Maine State Prison.  (SAMF ¶ 15; Marino Aff. ¶¶ 29-34.)  Warden Merrill had a conversation with Marino on December 6, 2006, where, according to Marino, Merrill told Marino to stop filing grievances and to also stop conducting legal work. (SAMF ¶ 16; Marino Aff. ¶ 36.)  Merrill insists that he never told Marino not to filed grievances.  (Resp. SAMF ¶ 16; Merrill Aff. 23; Costigan Aff.  ¶ 16.)  Tripp also points out that he granted Marino's October 19, 2006, grievance, disciplined the culpable parties, and wrote a letter to the Advocated requesting that she assist Marino with the grievance process.  (Resp. SAMF ¶ 16; Merrill Aff. ¶¶10, 13-16, 20, 27; Costigan Aff. ¶ 13.)

Marino states that prior to this meeting with Merrill, Marino had filed a number of grievances reporting not only the incident of September 26, 2006, but also the numerous incidents of retaliation Marino had been experiencing as a result of filing grievances.  (SAMF ¶ 17; Marino Aff.  ¶37.)  Tripp responds that Marino filed thirty-six of his forty-one grievances after December 6, 2006.  (Resp. SAMF ¶ 17; Costigan Aff. ¶ 6.) In January 2007 Merrill

---

[2] I address the facts material to the claims against those defendants in separate recommended decisions on their motions for summary judgment.  Although Marino includes a series of facts outlining the incident they are not material to the resolution of this motion filed by Officer Tripp although Marino can rest assured that I am very cognizant of the background when addressing Tripp's defense of his claims in this motion.

3

responded to four second level appeals for grievance filed by Marino prior to December 6, 2006, and Marino did not appeal to the second level the other grievances filed during this time. (Resp. SAMF ¶ 17; Merrill Aff. & Ex. 1.) One of the grievances was regarding the incident on September 26, 2006; one was regarding medical staff and the medical department, and two were regarding the grievance procedure. (Resp. SAMF ¶ 17; Merrill Aff. & Ex. 1.) Marino continued to file grievances. (SAMF ¶ 18; Resp. SAMF ¶ 18.) Tripp adds that Merrill responded to eighteen second level grievance appeals over the course of Marino's incarceration; the grievances included complaints regarding medical treatment and staff; mental health treatment and staff; mail room policy and staff; numerous corrections officers and prison staff; and the grievance process. (Resp. SAMF ¶ 18; Merrill Aff. & Ex. 1.) According to Marino, the incidents of retaliation included the tearing up of Marino's grievances and other legal work, as well as numerous assaults (SAMF ¶ 19; . Marino Aff. ¶¶ 65-67, 71-72, 76, 77-80, 83-85) but, as Tripp points out Marino does not refer to officers not named in this complaint. (Resp. SAMF ¶ 19). Marino states that Merrill acknowledged his grievances and that he would stop the retaliation but he failed to do so (SAMF ¶ 20; Marino Aff. ¶ 37) but Merrill states that he never found any evidence of retaliation and that the December 6, 2006, conversation was about the resolution of the September 26, 2006, incident. (Resp. SAMF ¶ 20; Merrill Aff. ¶¶ 21, 32; Costigan Aff. ¶ 16).

### December 7, 2006

At approximately 8:00 a.m. on December 7, 2006, Officer Tripp ordered Marino to clean his cell as he observed his cell to be in a state of disarray. (SMF ¶ 8; Tripp Aff. ¶ 5.) Marino adds that he was conducting legal work and had papers out to do so. (Resp. SMF ¶ 8; Merrill Letter to Merrill at 2.) According to Tripp, Marino refused to clean his cell and became verbally

4

abusive towards Officer Tripp. (SMF ¶ 9; Tripp Aff. ¶ 6.) Because of Marino's failure to comply with the order, Officer Tripp restricted Marino to his cell. (SMF ¶ 10; Tripp Aff. ¶ 7.) Marino continued to be disruptive, making demands and banging on his cell door. (SMF ¶ 11; Tripp Aff. ¶ 8.) Marino asserts that he and Tripp were arguing about whether Marino takes his meals in the pod or in the dining hall, but he relies on a hearsay statement to this effect. (Resp. SMF ¶ 9; Rubano Dec. 7, 2006, Report at 1, Doc. No.102-2.) Marino reported to Riley and Merrill that Tripp insisted that he take his meal in the pod and could have a tray after he cleaned his cell. (SAMF ¶¶ 21, 23; Letter to Riley at 3; Letter to Merrill at 2; Resp. SAMF ¶¶ 21, 23.)

Marino was then taken to meet with Sergeant Allen. (SMF ¶ 12; Resp. SMF ¶ 12; SMF ¶ 13; Resp. SMF ¶ 13.) Sergeant Allen then ordered Marino to clean his cell. (SAMF ¶ 22; Resp. SAMF ¶ 22.) Marino was then returned to his cell after he assured Sergeant Allen that he would clean his cell. (SMF ¶ 14; Resp. SMF ¶ 14.) Officer Tripp then again ordered Marino to clean his cell and he again refused and used profanity. (SMF ¶ 15; Resp. SMF ¶ 15.) Officer Tripp then locked Marino in his cell. (SAMF ¶ 24; Resp. SAMF ¶ 24.) Marino indicates that he complained of hyperventilating and an anxiety attack after being locked in his cell without breakfast. (Resp. SMF ¶ 9; Letter to Merrill at 2; SAMF ¶ 24.) He acknowledges that he may have been disruptive but attributes this disruption to his anxiety attack. (Resp. SMF ¶ 11; Letter to Merrill at 2.)[3]

Because of Marino's behavior and his inability to comply with the minimal requirements for orderly management, a decision was made by Dr. Maureen Rubano, to move Marino to the A-2 pod of the Mental Health Unit, which is the secure pod in the unit used to house disruptive inmates. (SMF ¶ 16; Resp. SMF ¶ 16.) Prior to the move, Marino was assessed by Rick Liberty,

---

[3] I strike Response Statement of Fact Paragraph 10 as the cited record citations are not competent evidence of why Marino was locked in his cell.

R.N. as Marino was becoming increasingly agitated and difficult. (SMF ¶ 17; Resp. SMF ¶ 17.) Again, Marino attributes his inability to comply with orders, his agitation, and difficultness to his anxiety attack. (Resp. SMF ¶¶ 16, 17; Letter to Merrill at 2.) Marino's pulse was elevated. (SAMF ¶ 25; Resp. SAMF ¶ 25.) Nurse Liberty informed Dr. Rubano that Marino was medically stable and informed Marino that if he needed any further medical attention, the medical staff would be available. (SMF ¶¶ 18, 25; Resp. SMF ¶ 18, 25.) Dr. Rubano informed Marino of her decision to place him on A-2 or sub-acute status; this is the secure pod in the unit used to house disruptive inmates. (SMF ¶ 19; Resp. SMF ¶ 19; SAMF ¶ 26; Resp. SAMF ¶ 26.) Marino became argumentative and used profanity. (SMF ¶ 20; Resp. SMF ¶ 20.)

Officer Regis Prevot and Officer Tripp were responsible for moving Marino from the A-1 pod to the A-2 pod. (SMF ¶ 21; Resp. SMF ¶ 21.) Officer Prevot and Officer Tripp placed Marino in soft restraints and escorted him to his cell in the A-2 pod. (SMF ¶ 22; Resp. SMF ¶22.) Dr. Maureen Rubano accompanied Officer Prevot and Officer Tripp during the move to A-2. (SMF ¶ 23; Resp. SMF ¶ 23.)

According to Tripp, when they arrived at the A-2 cell, Officer Prevot and Officer Tripp brought Marino into the cell and Officer Tripp began to take the soft restraints off of Marino's legs as Officer Prevot held him. (SMF ¶ 24; Prevot Aff. & Ex. 1; Tripp Aff. ¶ 18.) Tripp concedes that he ordered Marino to kneel on the bed but this was to allow the removal of the soft restraints. (Resp. SAMF ¶ 27; Tripp Aff. ¶ 18; Prevot Aff. & Ex. 1.) He points out that when Marino was told that he should look out the window, Marino asked why he had to look out the window. (Resp. SAMF ¶ 27; Letter to Reilly at 5; Letter to Merrill at 2.) Dr. Maureen Rubano remained just outside the cell signing the log book. (SMF ¶ 25; Resp. SMF ¶ 25.) Marino became combative and struggled as Officer Tripp was taking the restraints off of his legs and

refused to face the wall as ordered by Officer Prevot. (SMF ¶ 26; Prevot Aff. & Ex. 1; Tripp Aff. ¶ 19.) This can be a critical and dangerous situation as many officers have been injured while kneeling to remove the restraints off an inmate's legs. (SMF ¶ 27; Resp. SMF ¶ 27.) He was placed up against the wall after failing to comply with orders to stop struggling. (SMF ¶ 28; Prevot Aff. & Ex. 1; Tripp Aff. ¶ 21.) Marino responds that he was ordered to kneel on the bed and look out the window of his cell and while Officer Tripp held him Officer Prevot slammed his head against the window sill one or two times while Marino was handcuffed and shackled. (Resp. SMF ¶ 24; Marino Aff, ¶ 45; Letter to Merrill at 2; Letter to Riley at 5, Doc. No. 99-2; SAMF ¶¶ 27, 28.)[4] He insists that he was only in his cell a short time and was not combative/resisting. (Resp. SMF ¶¶ 26, 28; Letter to Merrill at 2;Letter to Riley at 6.)

According to Tripp, Marino then began to bang his head against the cell window adjacent to the cell wall. (SMF ¶ 29; Prevot Aff. & Ex. 1; Tripp Aff. ¶ 22.) Officer Prevot did not bang Marino's head into the window. (SMF ¶ 30; Prevot Aff. & Ex. 1; Tripp Aff. ¶ 23.) Marino was then placed on the mattress and the soft restraints put back on. (SMF ¶ 31; Prevot Aff. & Ex. 1; Tripp Aff. ¶ 24.) From her position outside the cell, Dr. Maureen Rubano heard Marino say, "I ain't fucking . . ." and the sounds of struggle from within the cell. (SMF ¶ 32; Rubano Aff. ¶ 29.) At this point, several officers came in to assist with the situation. Marino was placed up against the wall after failing to comply with orders to stop struggling. (SMF ¶ 33; Resp. SMF ¶ 33.) Marino continued to resist and be argumentative; (SMF ¶ 34; Prevot Aff. & Ex. 1; Tripp Aff. ¶ 26; Rubano Aff. ¶ 35 ); at his deposition he admitted that he was agitated and was using profanity (Resp. SAMF ¶ 30 Marino Dep. at 69-70).

---

[4] In his affidavit statement Marino has inflated his initial reports of one or two times to two or three times. (Marino Apr. 2, 2010, Aff. ¶ 45.)

According to Marino, he did not bang his head on the cell wall out of his own volition voluntarily but had it forcibly hit against the sill by Officer Prevot. (Resp. SMF ¶¶ 29, 30; Marino Apr. 22, 2010, Aff. ¶ 45; Letter to Merrill at 2; Letter to Riley at 5.) Marino's soft restraints were never fully removed. (Resp. SMF ¶ 31; Grant Aff. at 1, Doc. No. 97-5.) Peter Grant, an inmate in the vicinity at the time, heard two loud bangs followed by Marino yelling for the officers to stop. (Resp. SMF ¶ 32; Grant Aff. at 1; SAMF ¶ 29; Resp. SAMF ¶ 29.) He insists again that he never resisted or was argumentative. (Resp. SMF ¶ 34; Gerrish Aff. at 1; Marino Aff. ¶ 49; SAMF ¶ 30.)

Officer Tripp and Officer Prevot with several officers brought Marino down to an area outside the Mental Health Unit, called "receiving." (SMF ¶ 35; Prevot Aff. Ex. 1; Tripp Aff. ¶ 27; Rubano Aff. ¶ 30; SAMF ¶ 31; Resp. SAMF ¶ 31.)[5] Dr. Maureen Rubano accompanied the officers as they took Marino to the receiving area. (SMF ¶ 36; Resp. SMF ¶ 36.) There was no visible injury to Marino's head at this time. (SMF ¶ 38; Resp. SMF ¶ 38.) Tripp insists that Marino never requested medical treatment for any type of head pain or injury (SMF ¶ 38; Tripp Aff. ¶ 29; Rubano Aff. ¶¶ 33-34) but Marino retorts that he reported to medical after the incident complaining of severe headaches and received aspirin and medications as a consequence. (Resp. SMF ¶ 38; Marino Aff. ¶ 46.)

Officer Tripp returned to the A-1 pod and Officer Prevot remained with Marino in receiving with several other officers and Dr. Maureen Rubano. (SMF ¶ 39; Resp. SMF ¶ 39; Resp. SAMF ¶ 31.)

After another incident not involving Officer Tripp, Marino was taken to the medical department for treatment for chemical exposure only. (SMF ¶ 49; Resp. SMF ¶ 49.) Marino was

---

[5] Marino responds that he was assaulted while he was being escorted down to receiving (Resp. SMF ¶ 35) but the citation to the Gerrish Affidavit does not support this denial.

treated for chemical exposure. (SMF ¶ 50; Resp. SMF ¶ 50.) Marino was not treated for a laceration or bump on the head or for any other type of head injury by the medical department at the Maine State Prison. (SMF ¶ 51; Resp. SMF ¶ 51.) Marino was not treated by any outside provider for a laceration or bump on the head, or for any other head injury. (SMF ¶ 52; Resp. SMF ¶ 52.) Marino submitted a sick call to the Medical Department at the Maine State Prison on December 7, 2006, requesting to talk to someone from mental health but never requested any medical treatment for an injury to the head. (SMF ¶ 54; Resp. SMF ¶ 54.) Marino never submitted a sick call slip requesting treatment for a head injury that incurred on December 6, 2007. (SMF ¶ 55; Resp. SMF ¶ 55.)

In Dr. Maureen Rubano's professional <u>opinion</u>, this incident was the result of Marino's anger at having to clean his cell and his refusal to comply with the necessary routines of the prison. (SMF ¶ 56; Resp. SMF ¶ 56.) In Dr. Maureen Rubano's professional <u>opinion</u>, Marino became enraged by any requirement placed on him and construed every legitimate exercise of institutional control as a personal insult and a subject of litigation. (SMF ¶ 57; Resp. SMF ¶ 57.) While Dr. Maureen Rubano reports that she never observed any staff at the Maine State Prison abuse or harass Marino (SMF ¶ 58; Rubano Aff. ¶ 5), Marino counters that Kathryn Gerrish reports that she witnessed the officer's mistreatment of Marino along side Dr. Rubano and Dr Rubano would not intervene when asked to do so. (Resp. SMF ¶ 58; Gerrish Aff. at 2. )

Marino wrote detailed letters concerning the incidents which took place on December 7, 2006, to both Deputy Warden Riley on December 13, 2006, and to Warden Merrill on December 19, 2006. (SAMF ¶ 41; Resp. SAMF ¶ 41.) In January of 2007, Commissioner Magnusson signed the response to Marino's third level grievance appeal regarding the September 26, 2006, incident denying Marino's grievance. (SAMF ¶ 42; Resp. SAMF ¶ 42.) Commissioner

9

Magnusson was responsible for signing Marino's third level grievance appeals. (SAMF ¶ 43; Resp. SAMF ¶ 43.) The Commissioner received numerous third level grievance appeals all of which the Commissioner denied, concurring with the findings of the Warden. (SAMF ¶ 43; Resp. SAMF ¶ 43; Magnusson Aff. ¶¶ 17,18.) Marino wrote an additional letter to Warden Merrill on April 18, 2007, describing the September 26, 2006, incident and the alleged retaliation which followed. (SAMF ¶ 44; Resp. SAMF ¶ 44; Merrill Aff. ¶ 30.) According to Marino, after December 7, 2006, many of Marino's grievances were not processed, or officers refused to sign them. (SAMF ¶ 45; Marino Aff. ¶¶ 61-62; Grievance No. 07 MSP 402.) Per Tripp, Marino filed a total of thirty-six grievances after December 7, 2006, and the grievances were accepted unless they did not comply with the grievance policy requiring an attempt at informal resolution or filing within a specific time frame. (Resp. SAMF ¶ 45; Costigan Aff. ¶ 6.)

*August 24, 2007*

On August 24, 2007, Officer Tripp was working as a correctional officer in the Mental Health Unit of the Special Management Unit. (SMF ¶ 59; Resp. SMF ¶ 59.) Marino was housed in the Mental Health Unit on that day. (SMF ¶ 60; Resp. SMF ¶ 60.) In the morning, Officer Tripp ordered Marino to participate in laundry detail with the other inmates. (SMF ¶ 61; Resp. SMF ¶ 61.) Marino told Tripp that he had morning recreation time and he was going to the law library and use the computer to work on his legal work. (SMF ¶ 62; Resp. SMF ¶ 62; Marino Dep. at 86-88; Tripp Aff. ¶ 33; SMF ¶ 52; Resp. SAMF ¶ 52.) Tripp views this as a refusal to do laundry while Marino insists that his persistence that he was going to do his legal work was not a refusal to do the laundry. Officer Tripp restricted Marino to his cell. (SMF ¶ 63; Resp. SMF ¶ 63.)

According to Tripp, Marino became verbally abusive and used profanity saying to Officer Tripp, "You don't know who you're fucking with and I'll have your job." (SMF ¶ 64; Tripp Aff. ¶ 35.) Marino counters that he was not verbally abusive but he did tell Tripp to find someone else to "mess with" (or that "he is messing with the wrong guy") and that Marino felt at the time that this was Tripp's way of retaliating against him for filing grievances against him. (Resp. SMF ¶ 64; Grievance No. 07 MSP 401 at 5, Doc. No. 101-6; SAMF ¶ 54; Resp. SAMF ¶ 54; Huffer Aff. at 1.) This interaction between Tripp and Marino caused a disturbance in the pod. (SMF ¶ 65; Resp. SMF ¶ 65.) Marino then requested a grievance form which was provided to him by Officer Tripp (SAMF ¶ 53; Resp. SAMF ¶ 53) and, according to Marino, Tripp began to yell at Marino (SAMF ¶ 53; Grievance No. 07 MSP 401; Huffer Aff. at 1).

Marino was transferred to the A-2 pod of the Mental Health Unit because of Tripp's report of Marino's abusive and disruptive behavior. (SMF ¶ 66; Resp. SMF ¶ 66; SAMF ¶ 55; Resp. SAMF ¶ 55.)

### *Other Matters*

Marino did not file a notice of tort claim with the Office of the Attorney General referencing the alleged incidents on December 7, 2006, or August 24, 2007. (SMF ¶ 67; Sproul, Aff. ¶ 3.) Marino maintains that he sent a number of notices of claim, and asked several people, including the prison paralegal, the deadline for filing a notice of claim and he was not provided an accurate response. (Resp. SMF ¶ 67; Letter to Magnusson at 1, Doc. No. 1; Marino Aff. ¶ 95.) He also feels that his grievances put each defendant on substantial notice. (Resp. SMF ¶ 67.)

Marino's designated expert states that he believes Marino suffers from post-traumatic stress disorder as a direct result of the actions of Sergeant James E. O'Farrell and Jeffrey King.

(SMF ¶ 68; Resp. SMF ¶ 68.) According to Marino, he suffers, as a direct result of these incidents, genital pain, migraine headaches, severe skin issues due to numerous applications of mace, stomach problems related to ulcers as well as constipation as a result of stress, and severe heart pain and panic attacks five to ten times a day due to Post Traumatic Stress Disorder. (SAMF ¶ 58; Marino Aff. ¶¶ 140-147.) Tripp responds that Marino has not provided an expert witness designation for a medical professional who would be competent to testify to the alleged aggravation of Marino's condition. (Resp. SAMF ¶ 58; Hallisey-Swift Aff. ¶ 4.) Marino's expert does not reference Officer Tripp or the alleged incidents on December 7, 2006, or August 24, 2007, in his report. (SMF ¶ 69; Resp. SMF ¶ 69.) Marino filed forty-one grievances. (SMF ¶ 70; Resp. SMF ¶ 70.) Tripp opines that Marino felt it was okay to file grievances. (SMF ¶ 71; Marino Dep. at 62: 18- 19.) Marino responds that he has indicated that he felt it was okay to file grievances but he also maintains that on numerous occasions many of his grievances either were not investigated or were never acted upon at all. (Resp. SMF ¶ 71; Letter to Magnusson at 1; Grievance No. 07 MSP 402; Marino Aff. ¶¶ 62, 67, 72.)

On August 5, 2007, Marino wrote a letter to Warden Magnusson detailing incidents of alleged retaliatory conduct on behalf of prison guards towards the plaintiff and also of the abuses of the grievance process. (SAMF ¶ 51; Resp. SAMF ¶ 51.)

Ira Scherr was a correctional officer from August 2003 to July 2008 and was a union representative for most of that time including being the President of the Correctional Officers Union. (SAMF ¶ 56; Resp. SAMF ¶ 56.) Ira Scherr reported a corporate culture of corruption, harassment, and retaliation <u>against</u> correctional officers by all levels of administration at the Maine State Prison to Commissioner Magnusson. (SAMF ¶ 57; Scherr Apr. 22, 2010, Aff. ¶¶ 4-14; Resp. SAMF ¶ 57) (emphasis added).

Marino's attorney in this action, requested a copy of any and all videos regarding the alleged incidents from the defendants through discovery and was only provided with two videos neither of which depict the above-referenced incidents. (SAMF ¶ 63; Resp. SAMF ¶ 63.) Former Officer at the Maine State Prison, Ira Scherr, stated that the prison has a history of destroying documents and evidence in disciplinary cases involving investigation into employee conduct. (SAMF ¶ 64; Scherr Apr. 22, 2010.)

**Analysis**

**Constitutional Claim**[6]

As the First Circuit summarized in Skinner v. Cunningham vis-à-vis Eighth Amendment unconstitutional force allegations:

> The framework for analyzing such claims was set forth by the Supreme Court in Whitley v. Albers, 475 U.S. 312 (1986), and Hudson v. McMillian, 503 U.S. 1 (1992). Generally speaking, "[a]fter incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley, 475 U.S. at 319 (internal quotation marks omitted). The critical question in such a case is whether the force was applied "maliciously and sadistically for the very purpose of causing harm," id. at 320-21, rather than "in a good-faith effort to maintain or restore discipline." Hudson, 503 U.S. at 7.

430 F.3d 483, 488 (1st Cir.2005).

In his responsive memorandum, Marino spills a good quantity of ink talking about sexual harassment by other defendants that he has in no way linked in an evidentiary manner to Officer Tripp. It is also clear from the record evidence that Officer Tripp had nothing to do with Marino after he was moved to receiving December 7, 2006, as Officer Tripp returned to the A-1 pod and he was not involved in the effort to get Marino into a security smock.[7]

---

[6] The parties agree that the disposition of a 42 U.S.C. § 1983 claim also controls a claim under the Maine Civil Rights Act. See Berube v. Conley, 506 F.3d 79, 85 (1st Cir. 2007).

[7] As a consequence the dispute concerning the affidavit of former employee Kathryn Gerrish is not material to the claims against Tripp.

The facts material to Marino's Eighth Amendment claim against Tripp apropos the December 7, 2006, incident are pretty straightforward. Tripp concedes that he ordered Marino to kneel on the bed but this was to allow the removal of the soft restraints and that this can be a critical and dangerous situation as many officers have been injured while kneeling to remove the restraints off an inmate's legs. Marino states that he was ordered to kneel on the bed and look out the window of his cell and while Officer Tripp held him <u>Officer Prevot</u> slammed his head against the window sill one or two times. He insists that he was only in his cell a short time and was not combative/resisting. At this point, several officers came in to assist with the situation. He was placed up against the wall after failing to comply with orders to stop struggling. At his deposition Marino admitted that he was agitated and was using profanity. There is no record evidence that Tripp was responsible for the alleged use of force. Marino has not asserted a failure to intervene claim with regards to Tripp and on these facts such a claim would not be sustainable as there was no time for Tripp to do so assuming that Prevot did slam Marino's head against the windowsill. See <u>Calvi v. Knox County</u>, 470 F.3d 422, 431-32 (1st Cir. 2006).

As for the August 24, 2007, incident, the nucleus of facts just do not a triable constitutional claim make. Tripp ordered Marino to do laundry. Marino wanted to do his legal work. There may or may not have been a dispute about where Marino was going to eat. Tripp restricted Marino to his cell. Marino was mad and told Tripp to find someone else to mess with. Tripp provided Marino with a grievance form and yelled at Marino. Marino was transferred to the A-2 pod. There was no use of force. There was no interference with Marino's ability to file grievances.

**State Tort Claims**

Marino does not and cannot contest that a notice of claim -- a requisite for proceeding under the Maine Tort Claims Act -- has never been filed with respect to this December 7, 2006, incident. See 14 M. R. S. § 8107(1). The only notice of claim filed by Marino pertains to an incident on September 26, 2006, and Clarence Tripp had no involvement in that incident. Beyond asserting that 'substantial notice was provided' due to his grievances and letters, Marino has not attempted to make any credible good cause showing[8] for his failure to file this mandatory notice for this December 7, 2006, incident. See Smith v. Voisine, 650 A.2d 1350, 1352 -53 (Me. 1994).[9]

*Conclusion*

For these reasons I recommend that the Court grant Clarence Tripp summary judgment on his constitutional claim and grant him judgment on his two state law counts.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

June 30, 2010.

---

[8] I say credible because Marino does state in a conclusory way that he was asking for information from "several people" and was not provided with an accurate response. However, he filed his notice of claim on the September 26, 2006, incident and this was received by the Department of Corrections on March 21, 2007. This timely filing sandwiched within a few months of these other two events, belies Marino's contention that he could not have accomplished a timely filing as to these two later occurrences and certainly the onus is on Marino to provide concrete information to support his good cause argument beyond his own protestations that he tried.

[9] I further note that should the Court disagree with this conclusion as to either tort count, Tripp would be entitled to consideration of whether or not he is absolutely immune pursuant to 14 M.R.S. § 8111 (1)(c). I discuss this issue at greater length in my recommendation on Jeffrey King's dispositive motion.