UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TINO MARINO, | ) |
| | ) |
| Marino, | ) |
| | ) |
| v. | ) Civil No. 8-326-B-S |
| | ) |
| COMMISSIONER, MAINE DEPARTMENT OF | ) |
| CORRECTIONS, et al., | ) |
| | ) |
| Defendants | ) |
| | ) |

**RECOMMENDED DECISION ON MOTION FOR SUMMARY JUDGMENT
JEFFREY KING (Doc. No. 81)**

Tino Marino, who is proceeding on a third amended complaint, is suing nine defendants

for his alleged mistreatment when he was[1] an inmate at the Maine State Prison.   Herein I address

a hybrid motion to dismiss/motion for summary judgment filed by Officer Jeffrey King who was

directly involved in a key event at the prison on September 26, 2006, which is the subject of

Marino's complaint against King.  On the evening in question Marino got in disciplinary trouble

when he began talking to another inmate who was locked in thereby infringing prison rules. In

response to an order by Officer Hirsch, the officer on duty in Marino's unit that night, restricting

Marino to his cell for refusing to stop talking with this inmate (a practice called 'tagging'),

Marino expressed his incredulity and Marino grabbed his genitals with both hands as he walked

towards his cell.  This conduct led Hirsch to order Marino to see the sergeant on duty, former

Sergeant James O'Farrell, Jr.   There is no dispute, that as a consequence of the meeting with

Sergeant O'Farrell,  King ("the rover" for the unit), and Hirsch, Marino was ordered by Sergeant

O'Farrell to walk back to his cell holding his genitals, an order with which Marino complied

---

[1]      According to a recent affidavit submitted by Marino's attorney, Marino is currently living in Lubec, Maine.
(Campbell May 24, 2010, Aff. ¶ 2, Doc. No. 139-2.)

while being escorted by Officers King and Hirsch and Sergeant O'Farrell. Based on the summary judgment record below and for the reasons that follow, I recommend that the Court grant summary judgment in favor of Officer Jeffrey King on all three counts of Marino's complaint.

## DISCUSSION

**Summary Judgment Standard**

"The judgment sought" by Jeffrey King, "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c)(2). The purpose of summary judgment "'is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Coyne v. Taber Partners I, 53 F.3d 454, 457 (1st Cir. 1995) (quoting Wynne v. Tufts Univ. School Med., 976 F.2d 792, 794 (1st Cir. 1992).) "A Rule 56 motion may well end the case unless the party opposing it demonstrates the existence of a trialworthy issue as to some material fact." Id.

### *The Dispute about Marino's Self-Serving Affidavits*

Prior to setting forth the record facts, I address King's argument that certain paragraphs of Marino's April 2010 affidavits submitted in support of his defense of the summary judgment motion should be stricken because they are an overt attempt to change his deposition testimony, in particular his testimony pertaining to King's involvement in the directive to hold his genitals, whether King participated in name-calling in the office, his responsibility for the alleged banging of Marino's head into the corridor wall on the way back to the pod, and Marino's newly articulated reports of serious injury as a consequence of this encounter. In his reply

memorandum Officer King sets forth a very thorough record-based description of Marino's factual representations of the events of that night and his description of each defendant's role which I further summarize as follows:

- Marino's initial report to Melissa Cormier on September 27, 2006, attributing the derisive slurs and order to clutch his genitals to Sergeant O'Farrell only and not reporting any slamming into the wall or injury due to his self-contact with his genitals. He only mentioned King vis-à-vis the sit-down-stand-up routine. (Fowles Aff. ¶ 13 & Attach. at 13.)
- His report to Advocate Anne Rourke on October 5, 2006, did not indicate that Marino had been pushed or slammed into the wall or that he suffered genital injury or pain. He only mentioned King vis-à-vis the sit-down-stand-up routine. (Fowles Aff. ¶ 13 & Attach. at 30.)
- His report to Unit Manager Worchester on October 11, 2006, repeated the content of these two previous representations and added that Officer Hirsch laughed at him. He omitted a report of pushing or slamming and injury. The only mention of King was that he was present. (Fowles Aff. ¶ 13 & Attach. at 27.)
- His report to Unit Manager Fowles on October 13, 2006, repeating the facts of the prior three reports but now adding he was pushed against the wall while not identifying who pushed or that he suffered injury from holding his genitals. (Fowles Aff. ¶ 13 & Attach. at 4-5.)
- His six-page written statement as written at Fowles's request reports, as relevant, that in the office Sergeant O'Farrell and Officer King went through the sit-down-stand-up routine, Marino confirmed that he had grabbed his genitals in the pod, that Sergeant O'Farrell had uttered the derisive language – "what are you a faggot" and "you look like you like to suck dick" -- Sergeant O'Farrell ordered him to grab his genitals harder and with two hands, and that Sergeant O'Farrell threatened that if he did not hold them all the way back to his cell he faced segregation. He reported being pushed into the right wall but does not identify who did the pushing. (Fowles Aff. ¶ 13 & Attach. at 8-14.)
- His October 18, 2006, grievance indicates he was sexually assaulted and reports that he was told by Sergeant O'Farrell to grab his genitals and to keep both hands there until he reached his unit. There was no report he was pushed or slammed and there is no allegation that Officer King called him names or compelled him to grab his genitals. (Costigan Aff. Attach. at 1.)
- His November 20, 2006, appeal of this grievance only accuses Sergeant O'Farrell of calling him inappropriate names and forcing him to grab his genitals, no mention of any pushing or slamming or injury and pain. (Costigan Aff. Attach. 8-5.)
- Marino's notice of claim dated March 17, 2007, indicates that Sergeant O'Farrell made several inappropriate sexual comments and forced him to grab his genitals real hard all the way back to his cell under a threat of segregation. He stated that King and Hirsch were laughing and did not prevent the incident. There is no other mention of King or any indication of a push or slam or injuries. (Sproul Aff. Attach at 1.)

- Marino's initial complaint dated September 6, 2008, alleges that Marino was sexually assaulted by Sergeant O'Farrell, Officer King, and Officer Hirsch. His January 25, 2009, amended complaint reflects the same theory. In the March 16, 2009, third amended complaint setting forth Count One he pled: "On September 26, 2006, Defendant Corrections Officers Sergeant James O'Farrell, Jr. along with Officers Jeffrey King, and Nova Hirsch sexually abused and assaulted Plaintiff by forcing the Plaintiff to grab his genitals in a provocative manner and to walk down the hall holding his genitals tightly so others including a female guard could see him." (3d Am. Compl. ¶ 9 (version 1)). In Paragraph 10 he alleged that this caused him "public humiliation by cruel and abusive actions amounting to psychological torture and use of excessive force in violation of the 4th, 8th, 14th Amendments to the United States Constitution and Article One, Sections 5,6, 6-A, 9 of the Constitution, State of Maine. (Id. ¶ 10 (version 1).)

"When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4 -5 (1st Cir. 1994) (citing 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2726, at 30-31 (2d ed. Supp.1994), Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1297 (7th Cir.1993), Trans-Orient Marine v. Star Trading & Marine, 925 F.2d 566, 572-73 (2d Cir.1991), and Davidson & Jones Dev. v. Elmore Dev., 921 F.2d 1343, 1352 (6th Cir.1991)). "[I]t is significant that the affidavit was offered only after defendants had filed motions for summary judgment." Id.; see also Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 332 n. 3 (1st Cir.2005); Carmichael v. Verso Paper, LLC, 679 F.Supp.2d 109, 122 (D. Me. 2010). Although my recommended decisions in this series of dispositive motions have given Marino the benefit of the doubt with regards to his recollection as to which dates the key incidents complained about occurred on – e.g., February 1, 2007, as opposed to July 26, 2007 – Marino's attempt to recharacterize Officer King's involvement in the September 26, 2006, incident must be described as "an attempt to manufacture an issue of fact in order to survive summary judgment." Orta-

<u>Castro v. Merck, Sharp & Dohme Quimica P.R., Inc.</u>, 447 F.3d 105, 110 (1st Cir. 2006).

Marino's protestations that the defendants are somehow to be held accountable for the

termination and non-resumption of his deposition are frivolous given that it was Marino's

attorney decision to stop his client's deposition on the day agreed upon and he failed to make any

appropriate attempt to resume it or to correct the transcript although given the opportunity.

Marino's "memory problems seem to have developed only after the defendants filed their

summary judgment motions." <u>Id.</u> <u>See</u> also <u>Ziehm v. Radioshack Corp.</u> , Civ. No. 09-69-P-S,

2010 WL 2079550, 2 -4 (D. Me. 2010).

These cases make it quite clear that the decision of whether or not to credit a conflicting

account of a witness is an exercise of discretion. To assist this Court's review of this

recommended decision, in the following recital of the factual record I do acknowledge key areas

where Marino has relied on the affidavit to shore up his theory of liability vis-à-vis King.

**Facts** [2]

Marino was incarcerated at the Maine State Prison from September 21, 2006, through

March 20, 2008. (SMF ¶ 1; Resp. SMF ¶ 1.) On September 26, 2006, Marino was

incarcerated at the Maine State Prison in the "Medium Unit." (SMF ¶ 2; Resp. SMF ¶ 2.)

Jeffrey King is a corrections officer at the Maine State Prison at the time of Marino's

incarceration. (SMF ¶3; Resp. SMF ¶ 3; SAMF ¶ 1; Resp. SAMF ¶ 1.) King has been a

corrections officer at the Maine State Prison since August 2004. (SMF ¶ 4; Resp. SMF ¶ 4.)

---

[2]     Marino's responsive memorandum takes an irritating approach to supporting his argument by citations
directly to the record -- depositions and affidavits -- rather than holding to the record that is generated by the
statements of facts. My recommendation is based on the record as it stands after I have tunneled through the
statement of facts, the statement of additional facts, and the responses thereto and only those facts properly
supported by record citations in those statements.

King was the "rover" for the Medium Unit where Marino was housed on September 26, 2006. (SMF ¶ 5; Resp. SMF ¶ 5.)

Officer Hirsch was a corrections officer at the Maine State Prison while Marino was incarcerated there. (SMF ¶ 6; Resp. SMF ¶ 6; SAMF ¶ 1; Resp. SAMF ¶ 1.)  Hirsch was the officer on duty in the Medium Unit on September 26, 2006, at approximately 8:00 PM.  (SMF ¶ 7; Resp. SMF ¶ 7.) Hirsch is a female corrections officer. (SMF ¶ 8; Resp. SMF ¶ 8.)   James O'Farrell, Jr. was a sergeant at the Maine State Prison on September 26, 2006. (SMF ¶ 9; Resp. SMF ¶ 9; SAMF ¶ 1; Resp. SAMF ¶ 1.)

On September 26, 2006, at approximately 8:00 PM Marino, while in the Medium Unit, Marino was standing outside a cell speaking to an inmate "tagged in" his cell.  (SMF ¶ 10; Resp. SMF ¶ 10.)  It is a violation of the Maine State Prison's rules for inmates in the Medium Unit not in a cell to speak with inmates "tagged in" a cell. (SMF ¶ 11; Resp. SMF ¶ 11.)   Officer Hirsch observed Marino's rule violation from her desk in the Medium Unit.  (SMF ¶ 12; Resp. SMF ¶ 12.)  As a result of this rule violation, Hirsch told Marino he was "tagged in."   (SMF ¶ 13; Resp. SMF ¶ 13; SAMF ¶ 2; Resp. SAMF ¶ 2.)   "Tagged in" is when an inmate is restricted to his cell for a period of time for violating a rule.  (SMF ¶ 14; Resp. SMF ¶ 14.)  Marino replied to Officer Hirsch, "You serious, for what?" (SMF ¶ 15; Resp. SMF ¶ 15.)   Hirsch replied to Marino, "For talking to an inmate." (SMF ¶ 16; Resp. SMF ¶ 16.)

In the process of walking back to his cell, Marino grabbed his genitals with both hands as an offensive gesture.   (SMF ¶ 17; Resp. SMF ¶ 17.)  Hirsch observed Marino grab his genitals. (SMF ¶ 18;  Resp. SMF ¶ 18.)  Marino acknowledges that he did quickly grab his genitals through his clothing in response to another inmate, Martin A. Qualey, who was laughing at Marino.  (Resp. SMF ¶ 17; Marino Dep. at 42: 22- 43:6; SAMF ¶ 3; Resp. SAMF ¶ 3.)  Marino

also said to Qualey, "bite me." (SAMF ¶ 2; Resp. SAMF ¶ 2; Qualey Aff. at 2, Doc. No. 121-5.)

Marino was in a common area of the Medium Unit when he grabbed his genitals. (SMF ¶ 19;

Resp. SMF ¶ 19.) According to Hirsch when Marino grabbed his genitals he was facing her.

(SMF ¶ 20; Resp. SMF ¶ 20.) Marino adds that when he did this he did not subjectively think

that Officer Hirsch had seen him and he did not intend the gesture to be directed towards her

(Resp. SMF ¶ 20; Marino Apr. 2, 2010 Aff. ¶¶ 22, 23; Marino Dep. at 149: 24-25) but he

concedes that Hirsch "witnessed the plaintiff grab his crotch." (SAMF ¶ 3; Resp. SAMF ¶ 3.)

Hirsch advised Marino that his gesture constituted sexual harassment. (SMF ¶ 21; Resp.

SMF ¶ 21.) Marino was sent to Sergeant O'Farrell's office. (SMF ¶ 22; Resp. SMF ¶ 22;

(SAMF ¶ 3; Resp. SAMF ¶ 3.) Sergeant O'Farrell's office was down the hall from the Medium

Unit. (SMF ¶ 23; Resp. SMF ¶ 23.) O'Farrell's office is in the hallway that runs between all

the units. (SMF ¶ 24; Resp. SMF ¶ 24.) It is approximately one hundred feet (100') to go from

the Medium Unit to Sergeant O'Farrell's office. (SMF ¶ 25; Resp. SMF ¶ 25.)

After arriving at O'Farrell's office, Marino sat outside of O'Farrell's office. (SMF ¶ 26;

Resp. SMF ¶ 26.) While Marino was sitting outside O'Farrell's office, Officers King and

Hirsch met with O'Farrell in his office. (SMF ¶ 27; Resp. SMF ¶ 27.)[3] In a battle of competing

supplemental affidavits, Marino asserts that King was aware that Marino suffered from prior

mental health issues because of their previous interactions acknowledging this fact (SAMF ¶ 5;

Marino Apr. 2, 2010, Suppl. Aff. ¶ 6) and King "categorically" denies that he had any such

knowledge (Resp. SAMF ¶ 5; King May, 12, 2010, Suppl. Aff. ¶¶ 5, 6). After O'Farrell, King,

_____

[3]    In his Additional Statement of Fact Paragraph 4, Marino relies on the deposition testimony of Officer
Hirsch in which she describes her "impression" that Sergeant O'Farrell wanted Officer King to be the main speaker
of the reprimand. (SAMF ¶ 4; Hirsch Dep. at 35, Doc. No. 98-1.) King objects that this is inadmissible hearsay.
(Resp. SAMF ¶ 4.)

and Hirsch met, Marino was requested to come into O'Farrell's office. (SMF ¶ 28; Hirsch Dep. at 78:4-12; O'Farrell Aff. at ¶ 7; SAMF ¶ 6; Resp. SMF ¶ 6.)  Marino adds that his shirt was grabbed and lifted and it was in this way that it was indicated that he was to enter O'Farrell's office (SMF ¶ 28; Marino Dep. at 153: 2-7)[4] but Marino does not remember which one of these three defendants grabbed him (Marino Dep. at 153:1-17).

Marino was in O'Farrell's office with Officers King and Hirsch.  (SMF ¶ 29; Resp. SMF ¶ 29.)  While in this office, Marino admitted to grabbing his genitals.  (SMF ¶ 30; Resp. SMF ¶ 30.) While in O'Farrell's office, Officers King and Hirsch did not touch Marino. (SMF ¶ 31; Marino Dep.  at 156:1-16; O'Farrell Aff. at ¶¶ 8, 9, 10; King Aff. at ¶¶ 19, 20, 21; SMF ¶ 32; Resp. SMF ¶ 32.)   Marino expands, stating that when he entered the office both Sergeant O'Farrell and Officer King began to berate Marino and commenced giving him contradictory orders such as stand up and sit down or turn one way and then the other and to jump. (Resp. SMF ¶ 31; SAMF ¶ 7; Resp. SAMF ¶ 7)  Marino now insists – relying on his April 2010 affidavits -- that the pair ordered him to grab his crotch as hard as he could, and telling him he likes to "suck dick" and that he was a faggot, all causing Marino severe pain and humiliation.  (Resp. SMF ¶ 31; Hirsch Dep. at 37:2-38:6; Marino Apr. 2, 2010, Aff. ¶¶ 6-7; Marino Apr. 2, 2010, Suppl. Aff. ¶¶ 2,3; SAMF ¶¶ 7, 8.)   King responds that he did not order Marino to grab his crotch as hard as he could and that it was O'Farrell who alone gave this order.  (Resp. SAMF ¶ 7; Hirsch Dep. at 50:23-51:3; O'Farrell Aff. ¶ 11, Doc. No. 81-8; King Aff. 15, Doc. 81-4.)  He also insists that he never called Marino a faggot or told him he likes to suck dick (Resp. SAMF ¶ 8; King May 12, 2010, Suppl. Aff. ¶ 9; Hirsch Dep. at 63, 73), and correctly points out that the paragraph affidavit

---

[4]     This qualification is somewhat at odds with Paragraph 6 of his additional statement of fact in that there he says he "was instructed" to enter the office.

on which Marino relies to attribute these comments to King does not identify King as the speaker and instead states that it was Sergeant O'Farrell who thought Marino was gay (Marino Apr. 2, 2010, Suppl. Aff. ¶ 7).

Prior to leaving Sergeant O'Farrell's office, O'Farrell instructed Marino to grab his genitals as Marino had done just prior in the Medium Unit (SMF ¶ 33; Hirsch Dep. at 50:23-51:1; O'Farrell Aff. ¶ 11; King Aff. ¶ 15) and to hold his genitals all the way back to the Medium Unit (SMF ¶ 34; Hirsch Dep. at 52:2-5; O'Farrell Aff. ¶ 11; King Aff. ¶¶11, 15; Resp. SAMF ¶ 14). While walking back to his cell, Marino did hold his genitals with both hands. (SMF ¶ 36; Resp. SMF ¶ 36.) Marino elaborates that O'Farrell did order him to grab his genitals and hold them all the way back to the Medium Unit, but he also included in this order to do so with both hands as hard as Marino could. (Resp. SMF ¶ 33, 34; Marino Apr. 2, 2010, Aff. ¶ 6; SAMF ¶ 14; Marino Apr. 2, 2010, Suppl. Aff. ¶¶4-5.) Marino says he was in severe pain from being forced to grab himself and began to cry due to the humiliation and pain he was experiencing. (SAMF ¶ 9; Marino Apr. 2, 2010, Suppl. Aff. ¶2-3.)[5] He explains that prior to this incident, when he was incarcerated at the Maine Correctional Center in Windham, Maine he was diagnosed with a second scrotum or third testicle which was painful and being forced to grab himself severely aggravated the pain associated with this condition. (SAMF ¶ 10; Marino Apr. 2, 2010, Aff. ¶ 2; Marino Apr. 2, 2010, Suppl. Aff. ¶¶ 1-2.)[6] The order Marino received to grab his

---

[5]    King denies this additional fact without explanation. (Resp. SAMF ¶ 9.) As best I can judge by the record citations used he is attempting to point out that Officer Hirsch had no knowledge that he was suffering in this manner. (Hirsch Dep. at 67:10-21; id. Ex. 1, Doc. No. 100-4.)

[6]    Again, with no explanation King denies this additional statement of fact. (Resp. SAMF ¶ 10.) This time he cites to an attachment to the Grass Affidavit (Doc. No. 121-2 at 4) which is a sick call slip dated August 29, 2006, on record at the Maine Correctional Center on which Marino wrote: "I need my testicles checked out. I feel like I can't eat and something is pulling. I think one of my testicles split in two. It's really bothering me." (Id.) The physician signed the slip on September 6, 2006, and there seems to be a diagnosis but it is not legible to me.

crotch as hard as he could was under the threat of being sent to administrative segregation if Marino did not comply. (SAMF ¶ 11; Marino Apr. 2, 2010, Suppl. Aff. ¶ 8; Resp. SAMF 11.) Marino maintains that the office interactions lasted approximately one hour (SAMF ¶ 12; Marino Apr. 2, 2010, Suppl. Aff. ¶ 10) but King points to evidence of the log book which indicates that the period of time that elapsed between the time he left and returned to the pod was thirty-two minutes (Resp. SAMF ¶ 12; Hirsch Dep. at 71-72, 77; id. Ex. 2).

Marino was followed part of the way back to his cell by O'Farrell, King, and Hirsch. (SMF ¶ 37; Resp. SMF ¶ 37.)   According to King, at no timse during Marino's return from Sergeant O'Farrell's office was Marino pushed into the wall in the hallway. (SMF ¶ 38; Hirsch Dep. at 73:1-11; 77:2-4; O'Farrell Aff. ¶¶ 8, 9, 10; King Aff. ¶ 22; Resp. SMF ¶ 15.) At no time during Marino's return from Sergeant O'Farrell's office was Marino assaulted by King. (SMF ¶ 39; King Aff. ¶ 19, 20, 21, 22, 29; O'Farrell Aff. ¶¶ 8, 9, 10; Resp. SMF ¶ 15.) King did not instruct Marino to hold his genitals. (SMF ¶ 40; O'Farrell Aff. ¶¶ 11, 12; King Aff. ¶¶ 15, 24; Resp. SAMF ¶ 11; Hirsch Dep. at 51-52.)   King did not sexually abuse or sexually assault Marino on September 26, 2006. (SMF ¶ 42; King Aff. at ¶ 29.) The only contact King had with Marino after the September 26, 2006, incident was an unspecified comment made by King to Marino at an undetermined time. (SMF ¶ 43; Marino Dep. at 164:22-166:13.)

Marino counters as follows.  Relying on his April 2010 supplemental affidavit, he contends that when he was being escorted back to his cell, Officer King, in cooperation with Officer Hirsch and Sergeant O'Farrell slammed him into the wall on several occasions, causing him additional pain.  (Resp. SMF ¶ 38; Marino Apr. 2, 2010, Suppl. Aff. ¶ 5; Marino Dep. at 157:10-22; see also SAMF ¶ 15.)  King said at this juncture that Marino was not grabbing his genitals hard enough, in this way ordering Marino to grasp harder.  (Resp. SMF ¶ 138; Marino

10

Dep. at 159: 14-16.)  The affidavit paragraph that Marino relies on in this response is one in which he states:

> During my trip back to my cell, holding on to my groin, and all three continued to yell at me.  I was pushed against the wall by all three on several times, and since I had Nova Hirsch on one side of me and c/o King on the other side of me with the Sgt. O'Farrel[l] behind me, I do not know who pushed me when but it would have to have been a cooperative effort, except when I was pushed into the wall face first which was Sgt. O'Farrell's doing which caused more pain since I was holding my groin.

 (Marino Suppl. Aff. ¶ 5.)   In the deposition pages Marino cites to he indicates that King pushed him into the wall, concedes that he did not know specifically who pushed him into the wall, and then testifies that it was Sergeant O'Farrell yelling from behind him that he was not "grabbing them hard enough, boom, slamming into the freaking wall."  (Marino Dep. at 157-58.) He elaborated:

> I heard keys.  The sergeant didn't have his hands on me.  There was two officers who had their hands on me.  The Sergeant ain't pushing my back.  So the two officers would have had to have pushed me into the wall because if the sergeant ain't got his hands on me, he's just walking behind giving orders.

(<u>Id.</u> at 158-59.)  Defense counsel for King pressed Marino on the fact that his handwritten statement attributed the 'grab hard' order to Sergeant O'Farrell while his answer to an interrogatory attributed the statement to King.  (<u>Id.</u> at 159.)  Asked who said it, Marino replied: "At this time?  I' don't – who said that –the sergeant said it first and then when they pushed me up against the wall, King said it.  … I remember the sergeant saying it and hearing keys and then King said it when they pushed me against the wall."  (<u>Id.</u> at 159-60.)   Marino acknowledged that in his handwritten statement/grievance he did not report that King made this order to grab harder

and was responsible for pushing him into the wall.  (Id. at 160-62.)[7]  Marino claims that the

incident of September 26, 2006, was sexual assault.  (SMF ¶ 41; Compl.  ¶¶ 9,10 at 4; Marino

Dep. at 156:7-11; Resp. SMF ¶ 41.)

      With regards to the interactions between King and Marino after September 26, 2006,

Marino cites to his deposition testimony in which he describes a conversation he had with King

approximately two weeks after the event which began by Marino telling King "he went too far

and keep his mouth shut." (Resp. SMF ¶ 43; Marino Dep. at 165.)  Marino expanded that at this

time King "says, oh you weren't saying that down at the office or something, and I looked at him

and I says, well, what do you mean by that, and I says that's not funny and that's when I went to

my counselor …and that's when I knew it wasn't stopping,"  (Marino Dep. at 165:1-14.)  After

Marino suggested that King made other comments to him (Id. at 165:21-24), Marino conceded,

in a portion of this exchange not cited by Marino, that to the best of his knowledge King made

only this one comment to him.  (Id. at 166:8-13.)

      As a result of the incident on September 26, 2006, Marino claims he suffers from anxiety

attacks caused by post-traumatic stress syndrome.  (SMF ¶ 44; Marino Dep.  at 136:16-20.)

Marino complained of having anxiety attacks on August 21, 2006, prior to the September 26,

2006, incident and this interaction included a conversation about his Attention Deficit

Hyperactivity Disorder.  (SMF ¶ 45; Marino Dep. at 28:18-29:15, Ex. 3; Resp. SMF ¶ 45.)

Marino never reported any physical injuries from the incident on September 26, 2006, to Maine

State Prison staff. (SMF ¶ 46; Hirsch Dep. at 67:10-21; Resp. SMF ¶ 46.)  There is no dispute

that Marino filed a written grievance of this incident on October 19, 2006.  (SMF ¶ 47; Resp.

---

[7]     In response to Statement of Fact Paragraph 42, Marino asserts that King "slammed the plaintiff into the
wall "several times." (Resp. SMF ¶ 42.)  The cited portions of Marino's deposition do not support this
representation.

SMF ¶¶ 46, 47.) The written grievance did not allege any injuries. (SMF ¶ 28; Costigan Aff.,

Attach. at 1; Resp. SMF ¶ 48.) [8] While King asserts that the notice of claim dated March 19,

2007, filed by Marino did not allege any physical injuries, (SMF ¶ 49; Sproul Aff. ¶ 3; Attach. 1,

Doc. No. 77-13), Marino responds by pointing to his statement of monetary damages on that

form:

> I have emotional, [p]sychological and physical trauma including but not
> limited to anxiety attacks, nightmares, paranoia, PRSD and high blood pressure
> and loss of weight. My suffering is on going with no end in sight. I am presently
> in counseling for my PTSD symptoms so I leave it to the court to decide what
> monetary damages are appropriate.

(Sproul Aff. Attach. 1 at 2.) Marino also adds that he suffers from debilitating anxiety attacks

caused by post-traumatic stress syndrome, but also suffers from other symptoms such as erectile

dysfunction, memory loss, and that particular triggers will cause flash-backs to the incident

which occurred on September 26, 2006. (Resp. SMF ¶ 44; Marino Apr. 2, 2010, Suppl. Aff. ¶¶

116, 117.) With respect to all the incidents that he alleges occurred in the aftermath of the

September 26, 2006, affair, Marino asserts he continues to suffer genital pain, migraine

headaches, severe skin issues due to numerous applications of mace, stomach problems related to

ulcers as well as constipation as a result of stress, and severe heart pain and panic attacks five to

ten times a day due to Post Traumatic Stress Disorder. (SAMF ¶ 18; Marino Apr. 2, 2010, Aff.

¶¶ 140-147.) King reiterates that Marino complained of having anxiety attacks on August 21,

2006, prior to the September 26, 2006, incident. (Resp. SAMF ¶ 18; Marino Dep. at 28:18-24; id.

---

[8]     Marino attempts to qualify by stating that he did file a grievance and has reported his physical injuries to
the Maine State Prison since that time. However the three paragraphs of his unverified third amended complaint and
his citation to Paragraph 2 of his April 2, 2010 , supplemental affidavit do not support this qualification. In fact,
with respect to his attempted qualifications of Paragraphs 56 and 47, the affidavit statement represents that he was
too embarrassed to tell anyone about the physical problem he had with a third groin sac that was aggravated by the
orders given him on September 26, 2006, and states that he would not have been believed. (Marino Apr. 2, 2010,
Suppl. Aff. ¶ 2.)

Ex. 3.) Marino never reported any physical injuries from the incident on September 26, 2006, to Maine State Prison staff. (Resp. SAMF ¶ 18; Hirsch Dep. at 67:10-21.) He filed a written grievance of this incident on October 19, 2006, and the written grievance did not allege any injuries. (Resp. SAMF ¶ 18; Marino Dep. at 53:10-11; Costigan Aff. at ¶¶ 11, 13 & Attach. at 1.) The notice of claim dated March 19, 2007, filed by Marino did not allege any physical injuries. (Resp. SAMF ¶ 18; Sproul Aff. at ¶ 3 & Attach.)

After September 26, 2006, Officer King never had any conversations with staff at the Maine State Prison concerning harassing, tormenting or otherwise punishing Marino for filing a grievance/complaint against King. (SMF ¶ 50; King Aff. ¶ 30; Resp. SAMF ¶ 17.)[9] For what it is worth, King believes his treatment of Marino on September 26, 2006, was reasonable. (SMF ¶ 51; King Aff. ¶¶ 14, 25.) Also, for what it is worth, King believes his treatment of Marino on September 26, 2006, was not in violation of Marino's civil or Constitutional rights (SMF ¶ 52; King Aff. ¶¶ 14, 25) and he did not intend his actions on September 26, 2006, to violate any of Marino's civil or Constitutional rights. (SMF ¶ 53; King Aff. ¶¶ 14, 25.) Marino counters these assertions by reiterating his contention that King ordered him to grab his genitals harder and participated in some way in shoving him into the wall on the way back to his cell. (Resp. SMF ¶ 51; Marino Dep. at 157:10-22, 159:14-16; Marino Aff. ¶ 7.) He also cites to Jeffrey Merrill's affidavit in which the former warden stated: "Based on this investigation and the subsequent

_____

[9]     Marino's attempted denial of this paragraph is inapposite to whether or not King had conversations with MSP staff. (Resp. SMF ¶ 50;Marino Apr. 2, 2010 Aff. ¶19; Marino Dep. at 165.)

recommendations, Officer Jeffrey King received a two day suspension without pay with one day held in abeyance for ninety days." (Merrill Aff. ¶ 16.)[10]

Following the September 26, 2006, incident, Marino filed a grievance reporting the conduct of the three prison employees involved. (SAMF ¶ 16; Resp. SAMF ¶ 16; Marino Aff. ¶ 29; Costigan Aff. ¶11.) Marino filed forty-one grievances while incarcerated at the Maine State Prison. (SMF ¶ 54; Resp. SMF ¶ 54.) According to King, this is an indication that Marino did not feel hampered in his ability to file grievances. (SMF ¶ 55; Marino Dep. at 61:14-16.) Marino insists that after filing this grievance, he began to experience retaliation from other guards and prison employees at the Maine State Prison (SAMF ¶ 17; Marino Apr. 2, 2010, Aff. ¶¶ 29-34) but he advances no facts that King was involved in any acts of retaliation.

**Analysis**

In his responding to King's motion, Marino limits his Federal civil rights claim against King to a theory of Eighth Amendment cruel and unusual punishment and expressly characterizes the type of punishment as sexual harassment. (Resp. Mem. King Dispositive Mot. at 3-8.)[11] He makes no mention of retaliation by King.[12] He does briefly defend his state law claims of assault and emotional distress. (Id. at 8-9.)

---

[10]     In his attempt to deny Paragraphs 52 and 53 Marino cites to notes of Fowles's interview of Sergeant O'Farrell and not the notes of King's interview. (Resp. SMF ¶¶ 52, 53.) The same is true with respect to his Statement of Additional Fact ¶ 13.

[11]     Marino does not attempt to identify the alleged banging of his head against the wall on the walk back to his pod as a distinct Eighth amendment claim against King. As for his state-law tort claims, his notice of claim does not mention this allegation of force in describing his claim; it refers only to the alleged sexual harassment. (Doc. No. 77-13.)

[12]     This would appear to be a thought-out concession given the absence of evidence that Marino was able to generate as to King's personal post-incident involvement in any alleged retaliation against Marino.

## Constitutional Claims[13]

Turning to the Eighth Amendment claim against Marino, the First Circuit summarized in

Skinner v. Cunningham:

> The framework for analyzing such claims was set forth by the Supreme
> Court in Whitley v. Albers, 475 U.S. 312 (1986), and Hudson v. McMillian, 503
> U.S. 1 (1992). Generally speaking, "[a]fter incarceration, only the unnecessary
> and wanton infliction of pain ... constitutes cruel and unusual punishment
> forbidden by the Eighth Amendment." Whitley, 475 U.S. at 319 (internal
> quotation marks omitted). The critical question in such a case is whether the force
> was applied "maliciously and sadistically for the very purpose of causing harm,"
> id. at 320-21, rather than "in a good-faith effort to maintain or restore discipline."
> Hudson, 503 U.S. at 7.

430 F.3d 483, 488 (1st Cir.2005).

It is Marino's contention that the humiliation of Marino in being forced to walk back to his

cell grasping his genitals amounts to an Eighth Amendment violation.  Judge Carter reasoned in

Collins v. Graham:

> "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer
> can never serve a legitimate penological purpose and may well result in severe
> physical and psychological harm, such abuse can, in certain circumstances,
> constitute the 'unnecessary and wanton infliction of pain' " that is forbidden by
> the Eighth Amendment. Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir.1997)
> (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)) (internal quotation marks
> omitted).

377 F.Supp.2d 241, 243 (D. Me. 2005).

The Second Circuit concluded in Boddie v. Schnieder that "isolated episodes of harassment

and touching …  are despicable and, if true, they may potentially be the basis of state tort

actions. But they do not involve a harm of federal constitutional proportions as defined by the

---

[13]     The parties agree that the disposition of a 42 U.S.C. § 1983 claim also controls a claim under the Maine
Civil Rights Act.  See Berube v. Conley, 506 F.3d 79, 85 (1st Cir. 2007).

Supreme Court." 105 F.3d 857, 861 -62 (2d Cir. 1997) (citing Farmer v. Brennan, 511 U.S. 825, 833-34 (1994) and Rhodes v. Chapman, 452 U.S. 337, 348-349 & 348 n. 13 (1981)). There may be fact patterns in which this court could concluded that sexual harassment is sufficient to constitute an Eighth Amendment violation. However, most of the recent cases I have identified have concluded that one incident of non-violent harassment alone was not sufficient to meet the cruel and unusual punishment standard. See Silvagnoli v. Fischer, No. 9:07-CV-561 (NAM/GJD), 2010 WL 1063849, 14 (N.D.N.Y. Mar. 1, 2010) (" In this case, plaintiff alleges one instance in which defendant Neafach allegedly massaged his shoulders and "tried" to grab plaintiff's groin area. Pursuant to the analysis in Boddie this one incident, even if true, cannot form the basis for an Eighth Amendment violation. The alleged conduct in this case does not even rise to the severity of the conduct alleged in Boddie. Thus, any Eighth Amendment claim for sexual abuse against defendant Neafach may be dismissed."); White v. Bergenstock, No. 9:08-CV-717 (FJS/DRH), 2009 WL 4544390, 4 (N.D.N.Y. 2009) ("Here, White alleges at most a single, verbal, isolated statement in May 2007 in which Bergenstock told White to display his penis if White wished additional food. Compl. ¶ 36. If true, such a statement would, of course, be indefensible of itself. However, there is no evidence of physical contact, touching, or force."); see also Marino v. Comm'n Me. Dep't Corr., Civ. No. 08-326-B-S, 2009 WL 1150104 (D. Me. Apr. 28, 2009) (recommended decision on Officer King's motion to dismiss. In Collins the plaintiff's sexual harassment claim included " three factual allegations: (1) statements made to him about sexual acts; (2) an attempt to grab him in a sexual manner; and (3) exposure to a correction officer's genitalia." 377 F. Supp. 2d at 243. With respect to the attempt to grab allegation Judge Carter concluded:

It is well established that not even "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson v. McMillian, 503 U.S. 1, 9 (1992); see also Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir.1997) (inmate's allegations of excessive physical force-that he was bumped, grabbed, elbowed, and pushed-do not support an Eighth Amendment claim). Because not every physical touching constitutes a constitutional violation, it follows that an attempted touching-with no accompanying allegation of pain or injury-cannot support a claim of constitutional injury. Consequently, Plaintiff's allegation against Defendant Greenwald cannot form the basis for a section 1983 claim.

Id. at 244.

Based on the summary judgment record before me, King did not direct Marino to demonstrate what he did in the pod to Sergeant O'Farrell or order Marino to march back to his cell holding his genitals, the conduct that the Third Amended Complaint describes as "public humiliation by cruel and abusive actions amounting to psychological torture and use of excessive force." There is some question of whether or not King told him to grab harder as he walked down the hallway, but crediting this statement based on the tenuous record support proffered by Marino does not in my view create a triable Eighth Amendment claim against King in the context of this disciplinary walk that was, per Marino's own facts, determined by Sergeant O'Farrell to be the appropriate disciplinary response to Marino's own decision to grab his genitals while being confronted by Officer Hirsch.[14] King had no supervisory responsibilities vis-à-vis Sergeant O'Farrell. Even assuming that this sexual harassment constitutes a

---

[14] With respect to Marino's current efforts to assert that King also told him to grab his crotch, I note that in his response to Officer Hirsch's motion for summary judgment with regard to her liability he cites to his grievance in which he states that he felt like Officers King and Hirsch,

> should have said something when [Sergeant O'Farrell] told me to grab my dick the only reason I did it was I thought that when anyone goes to Sergeant's office they try to punk you out, but to tell someone to grab th[eir] dick they knew it was wrong so why did they just go along with it and assist him with punting me out. … I have never been disrespected like that before specially in front of a wom[a]n they should of said something and stopped him, not gone along with it, it is wrong and people shouldn't be degraded like that and for them to not say anything it makes me think this is how everyone gets treated."

(Mem. Resp. Hirsch Mot. Summ. J. at 8; Doc. No. 88-12 at 15.)

constitutional violation based on the precedents cited above, Marino has no credible evidence that King was responsible for choosing this course of discipline or that he uttered any of the derogatory homophobic slurs.

Marino has not attempted to argue that King's participation in the office 'sit down, stand up' shenanigans could rise in itself to an Eighth Amendment violation and that is highly sensible. See Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997)("It is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983.") This leaves Marino with, at most, a claim that it was abusive within the meaning of the Eighth Amendment for King to be amused during his humiliation by other officers. However, without more, this derision is clearly not an application of force within the meaning of the Eighth Amendment prohibition. See Collins, 277 F. Supp. 2d at 243-44; Ellis v. Meade, 887 F. Supp. 324, 329 (D.Me. 1995) (collecting cases).

Although the parties have not raised the concern, the United States Supreme Court in Wilkins v. Gaddy, __ U.S. __, __, 130 S.Ct. 1175, 1178 -1180 (2010) this term, walked away from those Circuit Court of Appeals which found Eighth Amendment claims non-cognizable purely on the grounds that the level of injury was "de minimis." Id. at 1179 n. 2. Rather, "the 'core judicial inquiry'" is not "the extent of the injury" but "the nature of the force -- specifically, whether it was nontrivial and 'was applied ... maliciously and sadistically to cause harm.'" Id. at 1179 (quoting Hudson, 503 U.S. at 7). I view momentarily laughing at a prisoner or using derisive language in a particular, nonrecurring situation as a form of punishment is easily categorizable as "trivial" even if motivated by ill will. See Ellis, 887 F. Supp. at 329.

With regards to his allegations that he was forced into the wall, King rightly points out that the Third Amended Complaint makes no allegation of this excessive force and it cannot be argued with a straight face that Marino's allegations of sexual harassment somehow implicitly included such a discreet excessive force Eighth Amendment claim. Second, the evidence is that Marino does not know whether or not King actually forced him into the wall, see Gaudreault v. Municipality of Salem, 923 F.2d 203, 207 (1st Cir. 1990), certainly his early reports were that he was holding one of King's arm on the way back to the cell.[15]

**State Law Counts**

With respect to Marino's state law claims against King Marino delvers a less than hearty opposition. Regarding his assault count he cites Hale v. Antoniou, Civ. No. 02-185, 2004 WL 1925551, 3 (Me. Super. July 29, 2004), a case citing Section 21 of the Second Restatement of Torts, which provides: "An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." Restatement (Second) Torts, § 21 (1965). Then he cites generally to the facts in arguing that he has demonstrated intentional offensive contact and physical injury. It is a theory that might be able to work but Marino has done no real work to connect the dots for the court in any meaningful way.

With respect to his third count: "To withstand a defendant's motion for summary judgment on a claim of intentional infliction of emotional distress," under Maine law," a plaintiff must present facts in support of each of the following four elements:"

_____

[15] As I note in my recommended decision on Officer Hirsch's motion for summary judgment, Marino did not plead a failure to intervene claim against Hirsch and King. See Calvi v. Knox County, 470 F.3d 422 (1st Cir. 2006). Unlike his response to Hirsch's motion, he had not pressed this theory apropos King in his response.

(1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct;

(2) the conduct was so "extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community";

(3) the actions of the defendant caused the plaintiff's emotional distress; and

(4) the emotional distress suffered by the plaintiff was "so severe that no reasonable [person] could be expected to endure it."

Curtis v. Porter, 2001 ME 158, ¶ 10, 784 A.2d 18, 22 -23 (quoting Champagne v. Mid-Maine Med. Ctr.,1998 ME 87, ¶ 15, 711 A.2d 842, 847 in turn quoting Loe v. Town of Thomaston, 600 A.2d 1090, 1093 (Me.1991)) (footnote omitted).  Curtis recognized that "a defendant may be liable for intentionally or recklessly inflicting emotional distress." 2001 ME 158, ¶ 10 n.9, 784 A.2d at 23 n.9   His only effort to flesh-out his right of recovery vis-à-vis King on this count is also to cite his facts en masse without aligning them concretely with these four prongs.  Then he states:  "The defendant's conduct has been shown to rise to the level of a constitutional violation and can therefore be regarded as atrocious and utterly intolerable in a civilized society …" (Resp. Mem. King Mot. Summ. J. at 9.)

However, as to both these counts the record is clear that the conduct complained flowed from a disciplinary infraction and was a disciplinary decision, albeit a very poor choice as Warden Merrill recognized in his own disciplinary decision vis-à-vis Sergeant O'Farrell and Officer King.  See Ellis, 887 F. Supp. at 328.  However unfortunate the choice of discipline was, I have concluded that King is entitled to summary judgment on Marino's constitutional claim. This conclusion informs my decision apropos the Maine Tort claims[16] for, under that act, King is

---

[16]     There have been many opportunities for judges in this district to address the interrelation  between claims of unconstitutional use of force and supplemental tort claims when discretionary immunity is a concern as to the latter.  In the excessive force by police officers situation the use of force by a police officer is a discretionary act. Comfort v. Town of Pittsfield, 924 F.Supp. 1219, 1236 (D.Me.1996). However, the immunity under the Maine  Tort

entitled to discretionary function immunity under the Maine Tort Claims Act for his participation in the march of shame. The Act extends immunity for "[p]erforming or failing to perform any discretionary function or duty, <u>whether or not the discretion is abused</u>." 14 M.R.S. § 8111(1)(c) (emphasis added).

In <u>Parlin v. Cumberland County</u>, 659 F.Supp.2d 201 (D. Me. 2009) this Court addressed a claim of unconstitutional force in the correctional setting which also stemmed from the disruptive conduct of the plaintiff that led, in that case, to a inter-establishment cell transfer decision involving three correctional staff. In <u>Parlin</u> two officers did not move for summary judgment on the excessive use of force claim -- the plaintiff suffered two black eyes and a torn left rotator cuff as a result of this incident -- so the constitutional claim against these two defendants was going to the jury. <u>See</u> <u>id.</u> at 206, 210 n. 8. As to the third officer who was moving for summary judgment on the excessive force claim, the Court concluded that the contact between the plaintiff and this officer "was minimal" and the forced used "fell well short of being 'repugnant to the conscience of mankind.'" <u>Id.</u> at 210 (quoting <u>Whitley</u>, 475 U.S. at 327). When addressing this defendant's claim of discretionary immunity under the Maine Tort Claim Act, the Court explained, "because the Court has already concluded that there is no factual dispute as to whether she used excessive force, there is also no factual dispute as to whether she abused her discretion." <u>Id.</u> at 214.

---

Claims Act does not apply when police officers "act in a manner so egregious as to clearly exceed, as a matter of law, the scope of any discretion they could have possessed in their official capacity as police officers." <u>Id.</u> (citation and internal punctuation omitted) That is, when a plaintiff has a triable claim that the defendant violated his constitutional right to be free from excessive force, there is a triable issue that the defendant exceeded the scope of his or her discretion. <u>See also</u> <u>Parlin v. Cumberland County</u>, 659 F. Supp. 2d 201, 214 (D. Me. 2009); <u>Fortin v. Town of Wells</u>, Civ. No. 09-179-P-S, 2010 WL 1935750, 5 (D.Me. May 11, 2010).

The facts of this case as it pertains to Jeffrey King justify some emphasis on how this choice of discipline settled on by Sergeant O'Farrell is discretionary within the meaning of 14 M.R.S. § 8111 (1)(c). With respect to the decision to transfer the plaintiff because of behavioral issues in Parlin, the court explained:

> The Court is satisfied that the decision to transfer Plaintiff to a different cell and reasonable actions taken to effectuate transfer involved discretionary functions. See Erskine v. Comm'r of Corr., 682 A.2d 681, 686 (Me.1996) ( "The management and care of prisoners is a discretionary function."); see also Ellis [V. Meade] , 887 F.Supp. [324,] 331 [D. Me. 1995)] ("The Court is satisfied that the management and care of prisoners is more than a ministerial function. It requires use of the officer's judgment."). The issue, therefore, is whether the Individual Defendants' actions in effectuating Plaintiff's transfer were "so egregious that [they] exceeded as a matter of law, the scope of any discretion [they] could have possessed." Ellis, 887 F.Supp. at 331 (quoting Bowen [v. Dep't Human Servs.], 606 A.2d [1051,] 1055 [(Me.1992)].

Id.

Judge Brody also addressed a similar correctional context in Ellis where the pre-trial detainee was patted on his buttocks by an officer after the plaintiff, who had a recent history of self-harm, was asked to remove his high-school class ring, refused to do so, and a struggle ensued resulting in the plaintiff being restrained. 887 F. Supp. at 326-27. After a bench trial Judge Brody found that the defendant "lightly slapped or patted Plaintiff's buttocks several times while he was restrained." Id. at 327. With respect to this defendant's entitlement to immunity under 14 M.R.S. § 8111(c), the Court was "satisfied that the management and care of prisoners is more than a ministerial function. It requires use of the officer's judgment. … [S]uch activity constitutes the carrying out of a discretionary function." Id. at 331. Judge Brody then summarized:

> The Court also concludes that Defendant Meade's conduct was not "so egregious that it exceed[ed], as a matter of law, the scope of any discretion [he]

could have possessed." <u>Bowen</u>, 606 A.2d at 1055 (citation & internal quotations omitted). Defendant Meade's actions, while perhaps mistaken and ill-advised, were neither wanton nor oppressive. <u>See</u> <u>Leach v. Betters</u>, 599 A.2d 424, 426 (Me.1991) (finding discretionary function immunity where police officers' actions may have been mistaken but could not be characterized as either wanton or oppressive). Moreover, there is no persuasive evidence that Defendant Meade was motivated by ill will, bad faith, or an improper motive. <u>Id.</u> Rather, the Court has already found that Defendant Meade was attempting to calm Plaintiff. Accordingly, the Court concludes that Defendant Meade is entitled to discretionary function immunity under the Maine Tort Claims Act.

<u>Id.</u>

The facts about this September 26, 2006, disciplinary scheme are a little more friendly to the plaintiff's case than those found by Judge Brody in <u>Ellis</u>.  However, I do not conclude that Officer King's participation in the matter (as described in the discussion of the constitutional claim) crosses the dividing line between an immunity protected abuse of discretion to being "wanton and oppressive" or "so egregious as to clearly exceed, as a matter of law, the scope of any discretion [he] could have possessed."

### *Conclusion*

For these reasons I recommend that the Court grant Jeffrey King judgment on all three counts of Marino's complaint.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

June 30, 2010.

24