UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TINO MARINO, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 8-326-B-S |
| | ) |
| COMMISSIONER, MAINE DEPARTMENT OF CORRECTIONS, et al., | ) |
| | ) |
|     Defendants | ) |
| | ) |

**RECOMMENDED DECISION ON MOTION FOR SUMMARY JUDGMENT
JAMES E. O'FARRELL, JR. (Doc. No. 82)**

    Tino Marino, who is proceeding on a third amended complaint, is suing nine defendants for his alleged mistreatment when he was[1] an inmate at the Maine State Prison. Herein I address a motion for summary judgment filed by former Sergeant James E. O'Farrell who was directly involved in a key event at the prison on September 26, 2006, which are the sole subject of Marino's complaint against Sergeant O'Farrell. On the evening in question Marino got in disciplinary trouble when he began talking to another inmate who was "locked in," thereby infringing prison rules. In response to an order by Officer Hirsch, the officer on duty in Marino's unit that night, restricting Marino to his cell for refusing to stop talking with this inmate (a practice called 'tagging'), Marino expressed his incredulity and Marino grabbed his genitals with both hands as he walked towards his cell. This conduct led Hirsch to order Marino to see the sergeant on duty, this defendant. There is no dispute, that as a consequence of the meeting with Sergeant O'Farrell, Officer Jeffery King ("the rover" for the unit), and Hirsch, Marino was ordered by Sergeant O'Farrell to walk back to his cell holding his genitals, an order with which

---

[1]     According to a recent affidavit submitted by Marino's attorney, Marino is currently living in Lubec, Maine. (Campbell May 24, 2010, Aff. ¶ 2, Doc. No. 139-2.)

Marino complied while being escorted by Officers King and Hirsch and Sergeant O'Farrell. Based on the summary judgment record below and for the reasons that follow,[2] I recommend that the Court grant O'Farrell's motion.

## DISCUSSION

**Summary Judgment Standard**

"The judgment sought" by former Sergeant O'Farrell, "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c)(2). The purpose of summary judgment "'is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Coyne v. Taber Partners I, 53 F.3d 454, 457 (1st Cir. 1995) (quoting Wynne v. Tufts Univ. School Med., 976 F.2d 792, 794 (1st Cir. 1992).) "A Rule 56 motion may well end the case unless the party opposing it demonstrates the existence of a trialworthy issue as to some material fact." Id.

**Facts**

On September 26, 2006, Marino was incarcerated at the Maine State Prison in the "Medium Unit." (SMF ¶ 1; Resp. SMF ¶ 1.) Defendant King was the "rover" for the Medium Unit where Marino was housed on September 26, 2006. (SMF ¶ 2; Resp. SMF ¶ 2.) Defendant Nova Hirsh was a corrections officer at the Maine State Prison while Marino was incarcerated at Maine State Prison. (SMF ¶ 3; Resp. SMF ¶ 3.) Hirsch was the officer on duty in the Medium Unit on September 26, 2006, at approximately 8:00 PM. (SMF ¶ 4; Resp. SMF ¶ 4.) Hirsch is a female corrections officer. (SMF ¶ 5; Resp. SMF ¶ 5.) Defendant James O'Farrell was a

---
[2] Marino "concedes the point that the claims against the defendants in their official capacity w[ere] ill conceived" and subject to dismissal. (See Resp. Mem. James E. O'Farrell Dispositive Mot. at 2 n. 1.)

sergeant at the Maine State Prison on September 26, 2006. (SMF ¶ 6; Resp. SMF ¶ 6.) Sergeant James E. O'Farrell is the son of Deputy Warden James L. O'Farrell. (SAMF ¶ 1; Resp. SAMF ¶ 1.)[3]

On September 26, 2006, at approximately 8:00 PM, while in the Medium Unit Marino was standing outside a cell speaking to an inmate "tagged in" his cell. (SMF ¶ 7; Resp. SMF ¶ 7.) It is a violation of the Maine State Prison's rules for inmates in the Medium Unit not in a cell to speak with inmates "tagged in" a cell. (SMF ¶ 8; Resp. SMF ¶ 8.) Officer Hirsch observed Marino's rule violation from her desk in the Medium Unit. (SMF ¶ 9; Resp. SMF ¶ 9.) As a result of this rule violation, Hirsh told Marino he was "tagged in." (SMF ¶ 10; Resp. SMF ¶ 10.) "Tagged in" is when an inmate is restricted to his cell for a period of time for violating a rule. (SMF ¶ 11; Resp. SMF ¶ 11.) Marino replied to Hirsch, "You serious, for what?" (SMF ¶ 12; Resp. SMF ¶ 12.) Officer Hirsch replied to Marino, "For talking to an inmate." (SMF ¶ 13; Resp. SMF ¶ 13.)

There is no dispute that in the process of walking back to his cell, Marino grabbed his genitals with both hands as an offensive gesture. (SMF ¶ 14; Resp. SMF ¶ 14.) Marino adds that a fellow pod inmate, Martin Qualey, would testify that he was aware of the rule that inmates are not supposed to talk to another inmate on cell restrictions and Qualey therefore laughed at Marino. (Resp. SMF ¶ 14; Qualey Aff. at 2, Doc. No. 121-5.) Marino then turned and looked at Qualey, grabbed his privates and told Qualey to "bite" him. (Resp. SMF ¶ 14; Qualey Aff. at 2, Doc. No. 121-5.) Hirsch observed Marino grab his genitals. (SMF ¶ 15; Resp. SMF ¶ 15.) Marino was in a common area of the Medium Unit when he grabbed his genitals. (SMF ¶ 16; Resp. SMF ¶ 16.) According to the defendant, when Marino grabbed his genitals, he was facing Officer Hirsch. (SMF ¶ 17; Hirsch Dep. at 11:7-16, Doc. No. 98-1.) According to Marino, he was facing Qualey when

---

[3] Marino maintains that at the time James E. O'Farrell applied for his position as the MSP he shared an address with his father. (SAMF ¶ 2.) While Sergeant O'Farrell does not expressly dispute this, he correctly points out that Marino has not provided a proper record citation in support of this fact. (Resp. SAMF ¶ 2.) Marino has advanced several other facts relating to the father's awareness of occasions of alleged misconduct of his son that have no relevance to Sergeant O'Farrell's potential liability.

grabbed his privates. (Resp. SMF ¶ 17; Qualey Aff. at 2.) There is no dispute that Hirsch saw the gesture. Hirsch advised Marino that his gesture constituted sexual harassment. (SMF ¶ 18; Resp. SMF ¶ 18.)[4]

Marino was sent to Sergeant O'Farrell's office. (SMF ¶ 19; Resp. SMF ¶ 19.) Sergeant O'Farrell's office was down the hall from the Medium Unit (SMF ¶ 20; Resp. SMF ¶ 20), in the hallway that runs between all the units (SMF ¶ 21; Resp. SMF ¶ 21.) It is approximately one hundred feet (100') between the Medium Unit to Sergeant O'Farrell's office. (SMF ¶ 22; Resp. SMF ¶ 22.) After arriving at Sergeant O'Farrell's office, Marino sat outside the office. (SMF ¶ 23; Resp. SMF ¶ 23.) While Marino was sitting outside Sergeant O'Farrell's office, Officers King and Hirsh met with Sergeant O'Farrell in his office. (SMF ¶ 24; Resp. SMF ¶ 24.) After O'Farrell, King and Hirsch met, they requested that Marino come into the office (SMF ¶ 25; Resp. SMF ¶ 25) and he did so (SMF ¶ 26; Resp. SMF ¶ 26).

According to the defendant, while Marino was in his office, Marino admitted to grabbing his genitals. (SMF ¶ 27; Hirsch Dep. at 50:2.) Sergeant O'Farrell and Officers King and Hirsch did not touch Marino when he was in the office. (SMF ¶¶ 28, 29, 30; Marino Dep. at 48:24-49:1, 156:1-16; Hirsch Dep. at 74:11-12; O'Farrell Aff. ¶ 8.) Marino concedes that not one of these defendants touched him during this office encounter but King was screaming at him that he was his regular pod officer and was he going to have to deal with more (Resp. SMF ¶ 28; Hirsch Incident Report) and that Sergeant O'Farrell did threaten to put Marino in segregation if he did not admit that grabbing himself was an affront to a female guard (Resp. SMF ¶ 29; Fowles Investigation at 10, Doc. No. 97-3.)[5] When responding to a question that included a query as to whether Marino was threatened with

---

[4] Marino purports to qualify this statement by acknowledging that the gesture may have been considered sexual harassment by a new female guard but that the gesture was intended for another inmate and would not have been so misconstrued by another male guard. (Resp. SMF ¶ 18.) This qualification is entirely immaterial to the legal issues involved in this case. It is irrelevant to the resolution of this motion whether or not Hirsch was correct in her assessment that this gesture constituted sexual harassment.

[5] Parts of the Fowles Investigation Report appear elsewhere in the record; my page numbers are keyed to this docket number.

segregation if he did not comply, Sergeant O'Farrell responded that he was "basically trying to embarrass him rather than take him to seg." (SAMF ¶ 18; Fowles Investigation at 31 (Question 7(A)); Resp. SAMF ¶ 18.)[6] With respect to his admission that he grabbed his genitals Marino only made this admission after being badgered by Sergeant O'Farrell so he said, "I shouldn't have grabbed my crotch and I couldn't explain. I said look at the camera and you will see." (Resp. SMF ¶ 27; Fowles Investigation at 9.)

Sergeant O'Farrell concedes that prior to leaving his office, O'Farrell instructed Marino to grab his genitals as Marino had done just prior in the Medium Unit (SMF ¶ 31; Hirsch Dep. at 50:23-51:1.; O'Farrell Aff. ¶ 11) and instructed Marino to hold his genitals all the way back to the Medium Unit ( SMF ¶ 32; Resp. SMF ¶ 32). While walking back to his cell, Marino held his genitals with both hands (SMF ¶ 34; Hirsch Dep. at 52:8-11) and was followed part of the way back by O'Farrell, King and Hirsch (SMF ¶ 35; Hirsch Dep. at 64:25-65:3, 66:1-17, 77:2-4). According to Sergeant O'Farrell, at no time during Marino's return from O'Farrell's office was Marino pushed into the wall in the hallway. (SMF ¶ 36; Hirsch Dep. at 73:1-11; 77:2-4.)

---

[6] Marino states that Sergeant O'Farrell could not recall any statements made to Marino in response to the investigating panel because of the length of time since the incident. (SAMF ¶ 17; Fowles Investigation at 34.) This statement standing alone is not material to the defendant's culpability. Sergeant O'Farrell's response does more to advance the materiality of this statement by indicating that he indicated he could not remember and was not sure if he made a "faggot" comment. (Resp. SAMF 17.) The question to which he was responding was: "Did you or anyone else ask/tell the prisoner 'what are you a faggot, you like to suck dick don't you, if you do its alright I just want to know if you're a faggot' or words to that effect?" (Fowles Investigation at 34.) Fowles's report contains the following conclusion as part of his analysis of Marino's claim against Sergeant O'Farrell: "Sgt. O'Farrell humiliated the prisoner by making him repeatedly sit, and then stand, turn around, jump, made statements to him such as 'you're a faggot aren't you, you like to suck dick don't you'." (Id. at 3.) Officer Hirsch told Fowles that Sergeant O'Farrell had made comments along this line. (Id. at 46.)

It rather defies reason that Marino has not incorporated into this summary judgment record this evidence concerning Sergeant O'Farrell's state of mind during the incident in question. In the context of this particular motion I do not think it is fair to incorporate this evidence given Marino's failure to advance the relevant statements of fact in his response, thereby depriving Sergeant O'Farrell the opportunity to frontally address them as anticipated by this District's summary judgment practice. I say especially in the context of this motion because Marino failed to file a timely responsive statement of material fact/statement of additional fact and only did so when the clerk's office heroically rectified Marino's counsel's electronic filing shortfalls after the defendants had filed their replies and this series of nine dispositive motions were ready for review. At this point counsel filed a motion to extend time to file a statement of fact in opposition to Sergeant O'Farrell's pleadings (Doc. No. 139) and after a telephone conference I granted this request and set a time for defense counsel to file his reply pleadings addressing Marino's tardy additional facts.

For his part, Marino insists that after he told Marino to grab his genital, Marino hesitated and O'Farrell said, "Are you a wimp. Do it now. I'm giving you 3 seconds to do it th[en] I'm lugging you [to segregation]. He started counting 1, then he said 2. I got really nervous, so I did I grabbed my genitals lightly. He said to grab them tight. I hesitated he said now so I did grab them tight. Then he said no, with both hands. So I did." (Resp. SMF ¶ 30; Fowles Investigation at 10.) He continues that O'Farrell then told him to start towards the pod and said "keep your hands on your crotch real tight, or I will lug you. Make sure you grab them real tight." (Resp. SMF ¶¶ 31, 34; Fowles Investigation at 10, Doc. No. 97-3.)[7] With respect to the assertion that at no time did Sergeant O'Farrell push him into the wall, Marino relies on Paragraph 5 of his April 2, 2010, supplemental affidavit in which he states:

> During my trip back to my cell, holding on to my groin and all three continued to yell at me, I was pushed against the wall by all three on several times, and since I had Nova Hirsch on one side of me and c/o king on the other side of me with the Sgt. O'Farrell behind me, I do not know who pushed me when but it would have been a cooperative effort, except when I was pushed into the wall face first which was Sgt. O'Farrell's doing which cause more pain since I was holding my groin.

(Marino April 2, 2010, Suppl. Aff. ¶ 5, Doc. No. 100-1.)[8]

At the time of the incident videos of the Maine State Prison could be kept on a server up to thirty days for review. (SAMF ¶ 10; Resp. SAMF ¶ 10; James E. O'Farrell Dep. at 7: 8-10.) On October 17, 2006, the Investigating Panel Reviewed the video systems again using a corrected time frame, no video was available twenty-one days following the September 26, 2006, incident. (SAMF ¶ 11; Resp. SAMF ¶ 11.) On September 26, 2006, Marino asked Sgt. James I.

---

[7] Marino insists that as the quartet proceeded towards the pod with Marino holding his genitals he was being pushed by Sergeant O'Farrell. (Resp. SMF ¶¶ 33, 35.) However, he relies on blatant hearsay in the Qualey affidavit and King's report in the Fowles Investigation which only states that O'Farrell was "close behind" Marino. (See Fowles Investigation at 19.)

[8] There is some controversy about Marino's two April 2, 2010, affidavits submitted in response to this round of dispositive motions. I do note that Paragraph 5 of this supplemental motion is particularly suspect to criticism as a self-serving effort to resist summary judgment. See Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4 -5 (1st Cir. 1994). I discuss this inquiry at greater length in my recommendation on Jeffrey King's dispositive motion. Marino also relies on the Qualey hearsay report of this push.

O'Farrell to look at the camera (in order to prove that his infraction was not as serious as reported). (SAMF ¶ 12; Fowles Investigation at 9.)

In Marino's opinion the incident report of Officer Hirsch dated October 24, 2006, is the most accurate account of the events of the incident. (SAMF ¶ 19; Fowles Investigation at 20-25.) Sergeant O'Farrell did not file an incident report prior to October 24, 2006. (SAMF ¶ 20; Resp. SAMF ¶ 20.)  Unit Manager Fowles "found evidence to support Marino's claim that [Sergeant] O'Farrell acted in an inappropriate manner." (SAMF ¶ 16; Resp. SAMF ¶ 16; Fowles Investigation at 3.)

Marino claims that the incident of September 26, 2006, was sexual assault and a violation of his constitutional rights. (SMF ¶ 38; Resp. SMF ¶ 38.) Sergeant O'Farrell had no contact with Marino after the September 26, 2006, incident. (SMF ¶ 38; Resp. SMF ¶ 38.) As a result of the incident on September 26, 2006, Marion claims he suffers from anxiety attacks caused by post-traumatic stress syndrome. (SMF ¶ 39; Resp. SMF ¶ 39.) He complained of having anxiety attacks on August 21, 2006, prior to the September 26, 2006, incident. (SMF ¶ 40; Resp. SMF ¶ 40.) Marino never reported any physical injuries from the incident on September 26, 2006, to Maine State Prison correctional staff (SMF ¶ 41; Hirsch Dep. at 67:10-21), although he did see a prison social worker the next day to discuss his mental health (Resp. SMF ¶ 41; Cormier Sept. 28, 2006, Report to Unit Manager Worster, Doc. No. 100-3.) Marino filed a written grievance of this incident on October 18, 2006. (SMF ¶ 42; Resp. SMF ¶ 42.) The written grievance did not allege any injuries ( SMF ¶ 43; Fowles Investigation at 16) although it did describe "humiliation and sexual assault (Resp. SMF ¶ 43; Fowles Investigation at 16).

The defendant maintains that after September 26, 2006, Sergeant O'Farrell never had any conversations with staff at the Maine State Prison concerning harassing, tormenting, or otherwise punishing Marino for filing a grievance/complaint against him. (SMF ¶ 44; O'Farrell Aff. ¶ 16.)[9]

**Analysis**

**Constitutional Count[10]**

In his memorandum in response to Sergeant O'Farrell's motion for summary judgment, Marino limits his federal and state constitutional claims against Sergeant O'Farrell to an Eighth Amendment cruel and unusual punishment theory premised on his allegation of sexual harassment and abuse. (Resp. Mem. Sergeant O'Farrell Mot. Summ. J. at 3-8.) Relative to his memorandum in response to motions for summary judgment by other defendants, Marino does very little in this memorandum to narrow in on the facts of the case that relate to Sergeant O'Farrell's potential liability. In this responsive memorandum Marino refers to retaliation he experienced after he grieved the incident but does not attempt to flesh out in anyway a retaliation claim against Sergeant O'Farrell, who, the facts are not in dispute, had no further contact with Marino after September 26, 2006. In short, Marino's response to Sergeant O'Farrell's motion for summary judgment is oddly pro forma. I say oddly because of all the defendants to this action Sergeant O'Farrell has admitted to the most damning facts concerning his conduct towards Marino.

Turning to the Eighth Amendment claim against Sergeant O'Farrell, the First Circuit summarized in Skinner v. Cunningham:

---

[9] Marino denies this, insisting that the defendant did have conversations with staff, including his father, with regards to the filing of grievances/complaints against him. (Resp. SMF ¶ 44.) He cites a statement made by Sergeant Lanphier to the investigating panel regarding an October 12, 2006, call to Deputy Warden O'Farrell. This is apparently a reference to Fowles's summary of an interview he conducted with Lanphier summarized in Fowles's report. (Fowles Investigation at 7.) Lanphier overheard a conversation between the father and son on October 12, 2006, and Lanphier heard Sergeant O'Farrell say "I don't know what I said dad" and when Sergeant O'Farrell hung up the phone Lanphier asked what that was about and Sergeant O'Farrell stated that he made Marino hold his genitals as he went back to the cell. (Id.) This does not provide a basis for denying the statement of fact concerning encouraging retaliation against Marino. Nor is it relevant as an additional statement of fact. (SAMF ¶ 3.)

[10] The parties agree that the disposition of a 42 U.S.C. § 1983 claim also controls a claim under the Maine Civil Rights Act. See Berube v. Conley, 506 F.3d 79, 85 (1st Cir. 2007).

8

> The framework for analyzing such claims was set forth by the Supreme Court in Whitley v. Albers, 475 U.S. 312 (1986), and Hudson v. McMillian, 503 U.S. 1 (1992). Generally speaking, "[a]fter incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley, 475 U.S. at 319 (internal quotation marks omitted). The critical question in such a case is whether the force was applied "maliciously and sadistically for the very purpose of causing harm," id. at 320-21, rather than "in a good-faith effort to maintain or restore discipline." Hudson, 503 U.S. at 7.

430 F.3d 483, 488 (1st Cir.2005).

With respect to an Eighth Amendment excessive force claim and this summary judgment record the most that Marino has attempted to do is to assert – through blatant hearsay – that Sergeant O'Farrell pushed him into the wall several times. I have stricken these statements of fact because it relies solely on the affidavit of an inmate named Qualey who did not witness the alleged conduct but is relaying only what Marino told him.

This leaves only the Eighth Amendment claim of cruel and unusual punishment due to the humiliation of Marino in being forced to walk back to his cell grasping his genitals. Judge Carter observed in Collins v. Graham:

> "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' " that is forbidden by the Eighth Amendment. Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir.1997) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)) (internal quotation marks omitted).

377 F.Supp.2d 241, 243 (D. Me. 2005).

The Second Circuit concluded in Boddie v. Schnieder that "isolated episodes of harassment and touching … are despicable and, if true, they may potentially be the basis of state tort actions. But they do not involve a harm of federal constitutional proportions as defined by the Supreme Court." 105 F.3d 857, 861 -62 (2d Cir. 1997) (citing Farmer v. Brennan, 511 U.S. 825, 833-34 (1994) and Rhodes v. Chapman, 452 U.S. 337, 348-349 & 348 n. 13 (1981)).

There may be fact patterns in which this court could conclude that sexual harassment is sufficient to constitute an Eighth Amendment violation. However, most of the recent cases I have identified have concluded that one incident of non-violent harassment alone was not sufficient to meet the cruel and unusual punishment standard. See Silvagnoli v. Fischer, No. 9:07-CV-561 (NAM/GJD), 2010 WL 1063849, 14 (N.D.N.Y. Mar. 1, 2010) ("In this case, plaintiff alleges one instance in which defendant Neafach allegedly massaged his shoulders and "tried" to grab plaintiff's groin area. Pursuant to the analysis in Boddie this one incident, even if true, cannot form the basis for an Eighth Amendment violation. The alleged conduct in this case does not even rise to the severity of the conduct alleged in Boddie. Thus, any Eighth Amendment claim for sexual abuse against defendant Neafach may be dismissed."); White v. Bergenstock, No. 9:08-CV-717 (FJS/DRH), 2009 WL 4544390, 4 (N.D.N.Y. 2009) ("Here, White alleges at most a single, verbal, isolated statement in May 2007 in which Bergenstock told White to display his penis if White wished additional food. Compl. ¶ 36. If true, such a statement would, of course, be indefensible of itself. However, there is no evidence of physical contact, touching, or force."); see also Marino v. Comm'n Me. Dep't Corr., Civ. No. 08-326-B-S, 2009 WL 1150104 (D. Me. Apr. 28, 2009) (recommended decision on Officer King's motion to dismiss). In Collins the plaintiff's sexual harassment claim included "three factual allegations: (1) statements made to him about sexual acts; (2) an attempt to grab him in a sexual manner; and (3) exposure to a correction officer's genitalia." 377 F. Supp. 2d at 243. With respect to the attempt to grab allegation Judge Carter concluded:

> It is well established that not even "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson v. McMillian, 503 U.S. 1, 9 (1992); see also Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir.1997) (inmate's allegations of excessive physical force-that he was bumped, grabbed, elbowed, and pushed-do not support an Eighth Amendment claim). Because not every physical touching constitutes a constitutional violation, it follows that an

> attempted touching-with no accompanying allegation of pain or injury-cannot
> support a claim of constitutional injury. Consequently, Plaintiff's allegation
> against Defendant Greenwald cannot form the basis for a section 1983 claim.

Id. at 244.

The record facts pertinent to the constitutional claim most favorable to Marino are that Marino admitted to grabbing his genitals – and although even now he does not dispute that he actually made the gesture in the pod – he claims that he only made the admission in Sergeant O'Farrell's office after some 'badgering.' He was receiving the disapprobation of Officer King who was screaming at him that he was his regular pod officer and was he going to have to deal with more and that Sergeant O'Farrell did threaten to put Marino in segregation if he did not admit that grabbing himself was an affront to a female guard. Sergeant O'Farrell reported during the investigation that he was basically trying to embarrass Marino rather than take him to segregation. With respect to his admission that he grabbed his genitals Marino only made this admission after being badgered by Sergeant O'Farrell so he said, "I shouldn't have grabbed my crotch and I couldn't explain." He asked Sergeant O'Farrell to watch the video. Sergeant O'Farrell concedes that prior to leaving his office, O'Farrell instructed Marino to grab his genitals as Marino had done just prior in the Medium Unit and instructed Marino to hold his genitals all the way back to the Medium Unit. Marino insists that after Sergeant O'Farrell told Marino to grab his genitals, Marino hesitated and O'Farrell questioned if he was a wimp, ordered him to do it immediately, gave him three seconds to do it unless he wanted to be lugged to segregation, and started counting to three. Marino got really nervous, so he grabbed his genitals lightly and O'Farrell ordered him to grab them tight with both hands and Marino complied. O'Farrell then told him to start towards the pod and said "keep your hands on your crotch real tight, or I will lug you. Make sure you grab them real tight."

Having worked my way through a series of six dispositive motions that address this incident, I am surprised to find Marino's inability to create a genuine dispute of material fact given O'Farrell's

concessions of his disciplinary approach and the content of the Fowles's report. The United States Supreme Court in <u>Wilkins v. Gaddy</u>, __ U.S. __, __, 130 S.Ct. 1175, 1178 -1180 (2010) this term, walked away from those Circuit Courts of Appeal which found Eighth Amendment claims non-cognizable purely on the grounds that the level of injury was "de minimis." <u>Id.</u> at 1179 n. 2. Rather, "the 'core judicial inquiry'" is not "the extent of the injury" but "the nature of the force -- specifically, whether it was nontrivial and 'was applied ... maliciously and sadistically to cause harm.'" <u>Id.</u> at 1179 (quoting <u>Hudson</u>, 503 U.S. at 7). There was evidence available to Marino that would have supported an argument that O'Farrell has made homophobic comments while in his office that supported an inference that O'Farrell was infused with ill will when he decided on his course of discipline. Whether or not it would have been sufficient to survive summary judgment is a bridge I need not cross because the evidence generated by Marino vis-à-vis O'Farrell would not permit a reasonable jury to conclude that O'Farrell was not applying this unfortunate choice of disciplinary approach to restore or maintain order given Marino's confessed obscene gesture on the pod after being told to lock in. The incident, as reflected in this summary judgment record, has the aura of a school boy prank, not a malicious and sadistic infliction of harm. While I do not question, at this juncture, the sincerity of the emotional and psychological harm inflicted upon Marino as a result of these events, I must look to the nature of O'Farrell's conduct here and the force applied against Marino by O'Farrell. When the incident is viewed through the lens of the summary judgment record I have before me, it simply cannot be said to rise to the level of a constitutional violation. Marino's clothing was not removed, his genitals were not touched by the officers, and the "march of shame" was nothing more than a mirror image of the voluntary conduct Marino himself chose, presumably in order to embarrass the female guard. While O'Farrell's conduct certainly does not appear to be that of a professional correctional officer with

12

supervisory responsibility, every error in judgment cannot be said to rise to the level of a violation of the United States Constitution.

**State Law Counts**

With respect to Marino's state law claims against Sergeant O'Farrell, Marino does very little to defend the triability of these counts to the court. Regarding his assault count he cites Hale v. Antoniou ,, Civ. No. 02-185, 2004 WL 1925551, 3 (Me. Super. July 29, 2004) a case citing Section 21 of the Second Restatement of Torts, which provides: "An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." Restatement (Second) Torts, § 21 (1965). Then he cites generally to the facts in arguing that he has demonstrated intentional offensive contact and physical injury. It is a theory that might be able to work but Marino has done no real work to connect the dots for the court in any meaningful way.

With respect to his third count: "To withstand a defendant's motion for summary judgment on a claim of intentional infliction of emotional distress," under Maine law," a plaintiff must present facts in support of each of the following four elements:"

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct;
> (2) the conduct was so "extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community";
> (3) the actions of the defendant caused the plaintiff's emotional distress; and
> (4) the emotional distress suffered by the plaintiff was "so severe that no reasonable [person] could be expected to endure it."

Curtis v. Porter, 2001 ME 158, ¶ 10, 784 A.2d 18, 22 -23 (quoting Champagne v. Mid-Maine Med. Ctr.,1998 ME 87, ¶ 15, 711 A.2d 842, 847 in turn quoting Loe v. Town of Thomaston, 600 A.2d 1090, 1093 (Me.1991)) (footnote omitted). Curtis recognized that "a defendant may be

liable for intentionally or recklessly inflicting emotional distress." 2001 ME 158, ¶ 10 n.9, 784 A.2d at 23 n.9  His only effort to flesh-out his right of recovery vis-à-vis Sergeant O'Farrell on this count is also to cite his facts en masse without aligning them concretely with these four prongs.  Then he states:  "The defendant's conduct has been shown to rise to the level of a constitutional violation and can therefore be regarded as atrocious and utterly intolerable in a civilized society …" (Resp. Mem. Sergeant O'Farrell Mot. Summ. J. at 9.)

However, as to both these counts the record is clear that the conduct complained flowed from a disciplinary infraction and was a disciplinary decision, albeit a very poor choice as Warden Merrill recognized in his own disciplinary decision vis-à-vis Sergeant O'Farrell and Officer King. See Ellis, 887 F. Supp. at 328.  However unfortunate the choice of discipline was, I have concluded that on the summary judgment record before me this defendant is entitled to summary judgment on his constitutional claim.  This conclusion informs my decision apropos the Maine Tort claims[11] for, under that act, O'Farrell is entitled to discretionary function immunity under the Maine Tort Claims Act for his development and supervision of this disciplinary response.  The Act extends immunity for "[p]erforming or failing to perform any discretionary function or duty, whether or not the discretion is abused." 14 M.R.S. § 8111 (1)(c) (emphasis added).

In Parlin v. Cumberland County, 659 F.Supp.2d 201 (D. Me. 2009) this Court addressed a claim of unconstitutional force in the correctional setting which also stemmed from the

---

[11]  There have been many opportunities for judges in this district to address the interrelation between claims of unconstitutional use of force and supplemental tort claims when discretionary immunity is a concern as to the latter.  In the excessive force by police officers situation the use of force by a police officer is a discretionary act. Comfort v. Town of Pittsfield, 924 F.Supp. 1219, 1236 (D.Me.1996). However, the immunity under the Maine Tort Claims Act does not apply when police officers "act in a manner so egregious as to clearly exceed, as a matter of law, the scope of any discretion they could have possessed in their official capacity as police officers." Id. (citation and internal punctuation omitted)  That is, when a plaintiff has a triable claim that the defendant violated his constitutional right to be free from excessive force, there is a triable issue that the defendant exceeded the scope of his or her discretion. See also Parlin v. Cumberland County, 659 F. Supp. 2d 201, 214 (D. Me. 2009); Fortin v. Town of Wells, Civ. No. 09-179-P-S, 2010 WL 1935750, 5 (D.Me. May 11, 2010).

disruptive conduct of the plaintiff that led, in that case, to a inter-establishment cell transfer decision involving three correctional staff. In Parlin two officers did not move for summary judgment on the excessive use of force claim  -- the plaintiff suffered two black eyes and a torn left rotator cuff as a result of this incident -- so the constitutional claim against these two defendants was going to the jury. See id. at 206, 210 n. 8. As to the third officer who was moving for summary judgment on the excessive force claim, the Court concluded that the contact between the plaintiff and this officer "was minimal" and the forced used "fell well short of being 'repugnant to the conscience of mankind.'" Id. at 210 (quoting Whitley, 475 U.S. at 327). When addressing this defendant's claim of discretionary immunity under the Maine Tort Claim Act, the Court explained, "because the Court has already concluded that there is no factual dispute as to whether she used excessive force, there is also no factual dispute as to whether she abused her discretion." Id. at 214.

This choice of discipline settled on by Sergeant O'Farrell is discretionary within the meaning of 14 M.R.S. § 8111 (1)(c) . With respect to the decision to transfer the plaintiff because of behavioral issues in Parlin, the court explained:

> The Court is satisfied that the decision to transfer Plaintiff to a different cell and reasonable actions taken to effectuate transfer involved discretionary functions. See Erskine v. Comm'r of Corr., 682 A.2d 681, 686 (Me.1996) ( "The management and care of prisoners is a discretionary function."); see also Ellis [V. Meade] , 887 F.Supp. [324,] 331 [D. Me. 1995]) ("The Court is satisfied that the management and care of prisoners is more than a ministerial function. It requires use of the officer's judgment."). The issue, therefore, is whether the Individual Defendants' actions in effectuating Plaintiff's transfer were "so egregious that [they] exceeded as a matter of law, the scope of any discretion [they] could have possessed." Ellis, 887 F.Supp. at 331 (quoting Bowen [v. Dep't Human Servs.], 606 A.2d [1051,] 1055 [(Me.1992)].

Id.

Judge Brody also addressed a similar correctional context in Ellis where the pre-trial detainee was patted on his buttocks by an officer after the plaintiff, who had a recent history of

self-harm, was asked to remove his high-school class ring, refused to do so, and a struggle ensued resulting in the plaintiff being restrained. 887 F. Supp. at 326-27. After a bench trial Judge Brody found that the defendant "lightly slapped or patted Plaintiff's buttocks several times while he was restrained." Id. at 327. With respect to this defendant's entitlement to immunity under 14 M.R.S. § 8111(c), the Court was "satisfied that the management and care of prisoners is more than a ministerial function. It requires use of the officer's judgment. … [S]uch activity constitutes the carrying out of a discretionary function." Id. at 331. It then summarized:

> The Court also concludes that Defendant Meade's conduct was not "so egregious that it exceed[ed], as a matter of law, the scope of any discretion [he] could have possessed." Bowen, 606 A.2d at 1055 (citation & internal quotations omitted). Defendant Meade's actions, while perhaps mistaken and ill-advised, were neither wanton nor oppressive. See Leach v. Betters, 599 A.2d 424, 426 (Me.1991) (finding discretionary function immunity where police officers' actions may have been mistaken but could not be characterized as either wanton or oppressive). Moreover, there is no persuasive evidence that Defendant Meade was motivated by ill will, bad faith, or an improper motive. Id. Rather, the Court has already found that Defendant Meade was attempting to calm Plaintiff. Accordingly, the Court concludes that Defendant Meade is entitled to discretionary function immunity under the Maine Tort Claims Act.

Id.

The facts about this September 26, 2006, disciplinary scheme are a little more friendly to the plaintiff's case than those found by Judge Brody in Ellis. However, I do not conclude that Sergeant O'Farrell's conduct in the matter (as described in the discussion of the constitutional claim and <u>limited by the record facts properly before the court</u>) crosses the dividing line between an immunity protected abuse of discretion to being "wanton and oppressive" or "so egregious as to clearly exceed, as a matter of law, the scope of any discretion [he] could have possessed."

*Conclusion*

For these reasons I recommend that the Court grant James E. O'Farrell, Jr. judgment on all three counts of Marino's complaint.

16

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

June 30, 2010.