UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TINO MARINO, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 8-326-B-S |
| | ) |
| COMMISSIONER, MAINE DEPARTMENT OF | ) |
| CORRECTIONS, et al., | ) |
| | ) |
|     Defendants | ) |
| | ) |

**RECOMMENDED DECISION ON MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT
RYAN KENYON (Doc. No. 85)**

This is a civil action brought in federal court by Tino Marino alleging violation of his rights while he was incarcerated at the Maine State Prison. One of the many defendants named in this suit, Ryan Kenyon, moves for summary disposition in this current motion. As things have been clarified as we have progressed through amended complaints and discovery, Kenyon's only litigable involvement with Marino concerns an incident on February 1, 2007, when Kenyon and Officers Bryant and Abbott entered Marino's cell to transfer him and a disciplinary issue arose concerning an orange fishing line in the cell. Marino maintains that Officer Abbott physically abused him while he was being held by Officers Kenyon and Bryant and that this abuse was not only a response to the orange fishing line present in his cell that day but also a retaliation for Marino's grievances of prior incidents of alleged officer wrong-doing on September 26 and December 7, 2006. Abbott and Bryant are not named defendants in this lawsuit.

Because I conclude that Marino has failed to create a triable issue that Ryan Kenyon violated his constitutional rights[1] and because Marino never filed a notice of claim as to this incident allowing him to proceed with his state tort claims on Counts Two and Three of his complaint as against Kenyon, I recommend that the Court grant Ryan Kenyon's dispositive motion.[2]

## DISCUSSION

**Summary Judgment Standard**

"The judgment sought" by Ryan Kenyon, "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c)(2). The purpose of summary judgment "'is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Coyne v. Taber Partners I, 53 F.3d 454, 457 (1st Cir. 1995) (quoting Wynne v. Tufts Univ. School Med., 976 F.2d 792, 794 (1st Cir. 1992).) "A Rule 56 motion may well end the case unless the party opposing it demonstrates the existence of a trialworthy issue as to some material fact." Id.

**Summary Judgment Facts**

Ryan Kenyon was a correctional officer at the Maine State Prison from March 20, 2006, until July 3, 2009. (SMF ¶ 1; Resp. SMF ¶ 1; SAMF ¶ 1; Resp SAMF ¶ 1.) Kenyon was working as a correctional officer during the time Marino was incarcerated at the Maine State

---

[1] Marino "concedes the point that the claims against the defendants in their official capacity w[ere] ill conceived" and subject to dismissal. (See e.g., Resp. Mem. Kenyon Dispositive Mot. at 7 n. 2.)

[2] It may be that this defendant is entitled to dismissal based on the complaint allegations against him. However, as with the other six defendants who have also filed hybrid motions, I elect to proceed with the summary judgment analysis in the interest of definitively determining as to all the defendants -- in one round of recommended decisions and objections -- if there are any claims that deserve proceeding to trial. Defendants O'Farrell, Jr. and King have moved for summary judgment only, King having unsuccessfully moved for dismissal earlier in this action and O'Farrell apparently recognizing that such a motion would have been futile in his case.

Prison from September of 2006 to March of 2008. (SMF ¶ 2; Resp. SMF ¶ 2; SAMF ¶ 1; Resp SAMF ¶ 1.)

On September 26, 2006, there was an incident involving Marino and defendants Sergeant O'Farrell, Officer King, and Officer Hirsch.[3] Following the September 26, 2006, incident, Marino used the grievance process, filing a grievance on October 19, 2006. (SAMF ¶ 14; Marino Affidavit ¶ 29; Resp. SAMF ¶ 14; Costigan Aff. ¶ 11 & Ex. 1.) According to Marino, after filing this grievance, Marino began to experience retaliation from "other guards" and prison employees at the Maine State Prison. (SAMF ¶ 15; Marino Aff. ¶¶ 29-34.)

On December 6, 2006, Warden Jeffrey Merrill came to see Marino and told him to stop filing grievances and stop doing legal work. (SAMF ¶ 16; Marino Apr. 2, 2010, Aff. ¶ 36.) Marino explained to Merrill and grievance officer Bob Costigan how he was being retaliated against and wanted it to stop and Warden Merrill told him that he acknowledged his grievances and he would stop the retaliation, but he never did. (SAMF ¶¶ 17, 20; Marino Aff. ¶ 37.) Marino continued to file grievances reporting incidents of retaliation for continuing to conduct legal work. (SAMF ¶18; Marino Aff. ¶ 41.) Incidents of alleged retaliation included the tearing up of Marino's grievances and other legal work, as well as numerous assaults. (SAMF ¶ 19; Marino Aff. ¶¶ 65-67, 71-72, 76, 77-80, 83-85.) Having acknowledged the grievances filed by Marino, Merrill admitted to Marino that he was aware of the reports of retaliation complained of by Marino. (SAMF ¶ 20; Marino Aff. ¶ 37.)

On December 7, 2006, there was another incident with Marino involving Defendants Prevot and Tripp, as well as several other Maine State Prison employees but not Kenyon.

---

[3]  I address the facts material to the claims against those defendants in separate recommended decisions on their motions for summary judgment.

Marino filed forty-one grievances. (SMF ¶ 73; Resp. SMF ¶ 73.) Marino wrote detailed letters concerning the incidents which took place on December 7, 2006, to both Deputy Warden Riley on December 13, 2006, and to Warden Merrill on December 19, 2006. (SAMF ¶ 40; Resp. SAMF ¶ 40.) In January of 2007, Commissioner Magnusson signed the response to Marino's third level grievance appeal regarding the September 26, 2006, incident denying Marino's grievance. (SAMF ¶ 41; Resp. SAMF ¶ 41.) Commissioner Magnusson was responsible for signing Marino's third level grievance appeals and the Commissioner received numerous third level grievance appeals. (SAMF ¶ 42; Resp. SAMF ¶42; Magnusson Aff. ¶¶ 17-18.) Marino wrote an additional letter to Warden Merrill on April 18, 2007, describing the September 26, 2006, incident and the alleged retaliation which followed. (SAMF ¶ 43; Resp. SAMF ¶ 43; Merrill Aff. ¶ 30.) According to Marino, after December 7, 2006, many of Marino's grievances were not processed, or officers refused to sign them. (SAMF ¶ 44; Marino Affidavit ¶¶ 61-62.) Kenyon reiterates that Marino filed a total of thirty-six grievances after December 7, 2006, and his grievances were accepted unless they did not comply with the grievance policy requiring an attempt at informal resolution or filing within a specific time frame. (Resp. SAMF ¶ 44; Costigan Aff. ¶ 6.) On August 5, 2007, Marino wrote a letter to Commissioner Magnusson detailing incidents of retaliatory conduct by prison guards towards Marino and also of the abuses of the grievance process. ( SAMF ¶ 50; Resp SAMF ¶ 50.)

According to Marino, on February 1, 2007, Officers Kenyon, Abbott, and Bryant entered Marino's cell and ordered him to kneel on the bed to be restrained. (SAMF ¶ 45; Marino Aff. ¶ 69; Grose Aff. at 1, Doc. No. 97-6.) After being restrained, Officer Kenyon held Marino while Officer Abbott assaulted Marino by punching him in the face several times telling Marino to stop resisting because he deserved what was happening to him; Marino's head was then pulled back

4

so that mace could be applied to his face. (SAMF ¶¶ 46, 47; Marino Aff. ¶ 69; Marino Dep. at 84: 5-15.) Marino was then moved from C side in segregation to receiving. (SAMF ¶ 48; Marino Aff. ¶ 69.) Marino submitted grievances regarding this incident which were never processed. (SAMF ¶ 49; Marino Aff. ¶ 72.)

Kenyon responds, adjusting to Marino's change in the date of the incident implicating him, that these officers entered Marino's cell to bring him to see his mental health worker. (Resp. SAMF ¶ 45; Grass Suppl. Aff. & Ex. 1 at 13-18.) As Marino was walking towards the door after being restrained he attempted to hide orange fishing line. (Resp. SAMF ¶ 46; Grass Suppl. Aff. & Ex. 1 at 13-18; Grievance 07-024 at 7, Doc. No. 101-4.) He was informed that he would be placed on restrictions for this violation and he became assaultive. (Resp. SAMF ¶ 46; Grass Suppl. Aff. & Ex. 1 at 13-18.) Marino turned quickly at Officers Abbott and Kenyon and was restrained to his bunk and a chemical agent was applied. (Resp. SAMF ¶ 47; Grass Suppl. Aff. & Ex. 1 at 13-18.) Marino was taken to receiving and treated for chemical exposure. He did not receive any medical treatment for any other injuries. He was moved to B-Wing as a result of his failure to comply with orders and resisting. (Resp. SAMF ¶ 48; Grass Suppl. Aff. & Ex. 1 at 13-18; Grass Feb 12, 2010, Aff. & Ex. 1, Doc Nos. 86-7 & 86-8.) With respect to the alleged filing of a grievance, Kenyon points out that Marino has not identified who did not process his grievance and Warden Merrill never received a grievance appeal regarding this incident. (Resp. SAMF ¶ 49; Merrill Aff. & Ex. 1.)

Kenyon never locked Marino in his cell without cause at any time during Marino's incarceration. (SMF ¶ 8; Kenyon Aff. ¶ 5.) Kenyon never observed any other correctional officer lock Marino in his cell without cause. (SMF ¶ 9; Kenyon Aff. ¶ 6.) Officer Kenyon

5

never struck Marino on the head at any other time during Marino's incarceration. (SMF ¶ 11; Kenyon Aff. ¶ 8.)

Marino failed to file a notice of tort claim with the Office of the Attorney General for the alleged incidents involving Kenyon. (SMF ¶ 15; Sproul Aff. ¶ 3; Resp. SMF 15.)

Marino's designated expert stated that he believed Marino suffers from post-traumatic stress disorder as a direct result of the actions of Sergeant James E. O'Farrell and Jeffrey King. (SMF ¶ 16; Resp. SMF ¶ 16.) According to Marino, he suffers -- as a direct result of these incidents -- genital pain, migraine headaches, severe skin issues due to numerous applications of mace, stomach problems related to ulcers as well as constipation as a result of stress, and severe heart pain and panic attacks five to ten times a day due to Post Traumatic Stress Disorder. (SAMF ¶ 57; Marino Aff. ¶¶ 140-147.) Kenyon responds that Marino has not provided an expert witness designation for a medical professional who would be competent to testify to the alleged aggravation of Marino's condition. (Resp. SAMF ¶ 57; Hallisey-Swift Aff. ¶ 4.) Marino's expert does not reference Kenyon or the alleged incidents on February 1, 2007, in his report. (SMF ¶ 17; Resp. SMF ¶ 17.)

Marino's attorney in this action requested a copy of any and all videos regarding the alleged incidents from the defendants through discovery and was only provided with two videos neither of which depict the above-referenced incidents. (SAMF ¶ 62; Resp. SAMF ¶ 62.) Ira Scherr was a correctional officer from August 2003 to July 2008 and was a union representative for most of that time including being the President of the Correctional Officers Union. (SAMF ¶ 55; Resp. SAMF ¶ 55.) Ira Scherr reported a corporate culture of corruption, harassment and retaliation <u>against</u> correctional officers by all levels of administration at the Maine State Prison to Commissioner Magnusson. (SAMF ¶ 56; Resp. SAMF ¶ 56; Scherr Apr. 22, 2010, Aff. ¶¶ 4-

14) (emphasis added). Ira Scherr, stated that the prison has a history of destroying documents and evidence in disciplinary cases involving investigation into employee conduct. (SAMF ¶ 63; Scherr Apr. 22, 2010, Aff. ¶ 15; Resp. SAMF ¶ 63.)

**Analysis**

### Constitutional Count[4]

The fundamental defect with Marino's case against Ryan Kenyon with regards to his first count under the Maine and United States constitutions is that he has no evidence that this defendant did anything constitutionally impermissible on February 1, 2007, let alone that he had any retaliatory motivation stemming from previous grievances against different officers. In his response to the dispositive motion Marino opines: "The complaint … alleges that … the defendant Officer Kenyon and Officer Prevot, along with Sergeants Abbott and Bryant locked the plaintiff in his cell, again without cause, while plaintiff was attempting to file a grievance and to conduct legal study in order to file grievances." (Resp. Mem. Kenyon Mot. Summ. J. at 5) (emphasis added). At this stage -- as I am not ruling on this dispositive motion on the grounds of failure to state a claim -- Marino needs to move beyond the allegations of his complaint.

With regards to his record evidence pertaining to this defendant he maintains that he continued to do his legal work after incidents involving other officers and that "on a later date" Officers Kenyon, Bryant and Abbott entered the plaintiff's cell and both Kenyon and Bryant held the plaintiff while officer Abbott struck the plaintiff's head and applied mace. (Id. at 9.) The deposition transcript Marino relies on in support of this contention reads:

> Q. Okay, and the officers, though, Officer Kenyon and Officer Bryant ---
> A. Yup, Officer Kenyon and Bryant, this is the one that it was Officer Kenyon, Bryant and Abbott.
> Q. There's another officer involved?

---
[4] The parties agree that the disposition of a 42 U.S.C. § 1983 claim also controls a claim under the Maine Civil Rights Act. See Berube v. Conley, 506 F.3d 79, 85 (1st Cir. 2007).

> A. Yeah,
> Q. Who hit you?
> A. Abbott hit me.
> Q. Abbott hit you?
> A. And they held me while he hit me and then I was maced.
> Q. And you were maced?

(Marino Dep. at 84: 5-16.) In addition Marino relies on the following two paragraphs of his affidavit:

> 68. On 2/1/07 I was assaulted and maced by officers Abbott, Kenyon and Bryant during deposition the July 26th incident was really 2/1/07 and now would like that distinguished I explained this to the attorney general on page 85 line 6.
> 69. Officer Abbott smashed my head into wall while I was kneeling on the bed following orders and tried to punch me in the face and I had got in fetal position [and] I was punched on top of head 3 to 4 times and I was yelling for him to stop and he said no he wouldn't because I was a big mouth and I deserved this I then had my hands pried back and maced then dragged from C side in segregation and brought to receiving.

(Marino Apr. 2, 2010, Aff. ¶¶ 67, 68.)

In neither his third amended complaint nor his memorandum responding to Kenyon's dispositive motion does Marino articulate a failure-to-intervene theory of recovery against this defendant. See Gaudreault v. Municipality of Salem, 923 F.2d 203, 207 n. 3 (1st Cir. 1990); see also Calvi v. Knox County, 470 F.3d 422 (1st Cir. 2006). In fact, his third amended complaint states that on the corrected date Officers Kenyon and Bryant "entered Defendant's cell and committed assault and battery by striking him viciously about the head." (3d Am. Compl. ¶ 12 (version 2).) This is not consistent at all with the current conception of Marino's claims against Ryan Kenyon as there is absolutely no evidence that Kenyon struck Marino at anytime during his incarceration at the prison.

The First Circuit summarized the applicable Eighth Amendment standard in Skinner v. Cunningham:

> The framework for analyzing such claims was set forth by the Supreme Court in <u>Whitley v. Albers</u>, 475 U.S. 312 (1986), and <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992). Generally speaking, "[a]fter incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." <u>Whitley</u>, 475 U.S. at 319 (internal quotation marks omitted). The critical question in such a case is whether the force was applied "maliciously and sadistically for the very purpose of causing harm," <u>id.</u> at 320-21, rather than "in a good-faith effort to maintain or restore discipline." <u>Hudson</u>, 503 U.S. at 7.

430 F.3d 483, 488 (1st Cir.2005). Ryan Kenyon is entitled to judgment on Count One based on the summary judgment record before me.

**State Tort Claims**

As Kenyon points out – and Marino does not and cannot contest – a notice of claim has never been filed with respect to this February 1, 2007, incident. See 14 M. R. S. § 8107(1). The only notice of claim filed by Marino pertains to an incident on September 26, 2006, and Ryan Kenyon had no involvement in that incident whatsoever. Beyond asserting that 'substantial notice was provided' due to his grievances and letters, Marino has not attempted to make any good cause showing for his failure to file this mandatory notice for this February 1, 2007, incident. See <u>Smith v. Voisine</u>, 650 A.2d 1350, 1352 -53 (Me. 1994).

*Conclusion*

For these reasons I recommend that the court grant Ryan Kenyon judgment on all three counts of Marino's complaint.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being

9

served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

June 30, 2010.